# JOSEPH OSBORN DUGAN *vs.* ROBERT S. ANDERSON.

*Separable Agreement—Contract Indivisible—Breach of Contract—Immediate right of Action—Damages—Evidence.*

Where an agreement embraces a number of distinct subjects, which admit of being separately executed and closed, the general rule is that it shall be taken distributively, and each subject be considered as forming the matter of a separate agreement after it is so closed.

In the summer of 1870, a contract was entered into between the plaintiff and defendant, by which the latter agreed to employ the former as clerk in his store, at a salary of not less than $1,500 per annum, until the 1st of March, 1871, and then to receive him as partner in his business for one year, certain, and allow him one-third of the profits; in pursuance of this promise and agreement by the defendant, the plaintiff gave up a situation and employment in which he was receiving $2,000 per annum, and entered into the service of the defendant as proposed, and continued therein until discharged and removed therefrom by the defendant; the plaintiff before instituting a suit against the defendant, offered to continue to serve him until the 1st of March, 1871, and then to become a partner in the business under their agreement, but the defendant, before suit brought, denied there was any such agreement between himself and the plaintiff, and refused to permit the plaintiff to continue in his service until the 1st of March, 1871, and required him to leave his employment, and forbade him to remain in the store in which the business was conducted, and denied he was entitled to become a partner therein from that date, and refused to receive him as such, when that time should arrive. The defendant did not at any time before the 1st of March, 1871, retract his action towards the plaintiff, and offer to receive him again into his employment until that time, and then to admit him as partner in the business as aforesaid. On the 5th of January, 1871, the plaintiff instituted suit against the defendant for a breach of the contract. HELD:

That while in one sense, the contract between the parties was in its nature and terms, separable and apportionable—the services as clerk and the partnership being capable of separate execution—it was in respect to the intention of the parties, to be entire and indivisible. The consideration for the plaintiff's action in entering into it, was not merely that he should be employed until the 1st of March, 1871, at a salary, but that he should be so employed *and* be taken as a partner at that time for a year, certain; and the conduct of the defendant consti-

tuted a breach of the contract, which gave an immediate right of action, and entitled the plaintiff to recover damages as for a breach of the entire contract.

The plaintiff, after offering evidence tending to establish the contract entered into between the defendant and himself, proved that he faithfully and efficiently in all particulars, discharged his duties under it, as long as he was allowed to execute it. He also proved that the engagement of the defendant to take him into his employment, first at a salary, and then to receive him as a partner, was absolute, and not in any way dependent upon the defendant's wanting him or not, or of his being satisfactory to the defendant; that he was not taken on trial, and his being taken into partnership was not to be a matter of contingency; that the defendant knew his qualifications and habits perfectly, having been intimate with him for many years, and knew what his position with Neale, his former employer, was, and what salary he was receiving from Neale, and what Neale's opinion of him was, and expressly waived in advance all claim to make the continuance of his employment and the taking him into partnership, dependent upon his being found satisfactory. He further proved he was in every way competent for the duties he assumed to discharge, and discharged them faithfully and fully. HELD:

That this testimony, coming from the plaintiff himself, as a witness, did not amount to such anticipation of the proof to be offered in evidence on the ground of his bad habits and incompetency, as ought, in the exercise of a sound discretion by the Court, to preclude him from replying to the specific proof adduced by the defendant, to wit: that while he (the plaintiff) was in the employ of Neale, where he had been since 1861, he was in the habit of drinking, and was more or less under the influence of liquor much of his time during that period, so as to render him unfit for business, and incapable of discharging his duties, and was negligent and inattentive. The plaintive having been properly allowed to reply to this, by offering evidence tending to show that while he was at Neale's he attended to his duties diligently and faithfully, he was further entitled to prove, in reply to the evidence of bad conduct, bad habits, and incompetency, that all the while he was at Bird's, where he had been employed for many years, and up to the very day he went into the service of Neale, that he was capable, efficient, attentive to his business, and of unexceptionable habits.

And this proof in its entirety, coming down as it did to the very day the plaintiff left Bird and went to Neale, did not relate to a period so distant and remote from that in respect to which the defendant had offered proof of incompetency and bad habits, as to make it altogether irrelevant and therefore inadmissible.

APPEAL from the Superior Court of Baltimore City.

This was an action brought by the appellee against the appellant for the breach of a contract. The facts of the case are stated with sufficient fulness in the prayers of the respective parties and in the opinion of the Court.

*First Exception:* After evidence had been offered on both sides, the plaintiff further proved by J. Edward Bird, that he had been for many years a dry goods merchant in Baltimore, and the plaintiff had been in his employment as a clerk, salesman and superintendent for sixteen or seventeen years, down to 1861, when he went to Neale's. The plaintiff's counsel then proposed to ask the witness the following question:

Please state what you know of his habits of punctuality, attention to his duties and efficiency, while in your employment. The defendant's counsel objected to the question as not applicable by way of rebuttal to any of the defendant's proof, and because it was irrelevant, and related to a time anterior to that covered by the defendant's proof.

The Court (DOBBIN, J.) overruled the objection, on the ground that according to the recollection of the Court, the testimony of the defendant's witness, Fisher, had impugned the character of the plaintiff in the particulars inquired of, while at Neale's. Thereupon the question being put, the witness testified, that while in his employment, the plaintiff was a capable and efficient salesman, attentive to business and of unexceptionable habits. The defendant excepted to both the question and the answer.

*Second Exception:* The plaintiff offered the three following prayers:

1st. If the jury shall find from the evidence that the plaintiff was employed by the witness, Neale, at a salary of $2,000 a year, and that at that time there was a firm composed of the defendant and the witnesses Bowen and McCabe, existing under the articles of co-partnership offered in evidence; and if they shall further find, that while the plaintiff was so

employed by said Neale, the defendant agreed with the plaintiff, without any condition as to plaintiff being taken on trial, that if the plaintiff would give up his employment under said Neale, the defendant would take the plaintiff into the employment of himself and said Bowen, as remaining members of said firm, after the retirement therefrom of said McCabe, until the 1st of March, 1871, and would allow the plaintiff for his services until said time, the share of the profits of said business which would have accrued to said McCabe as a member thereof to said time, had said McCabe remained in said firm, and in case said share of said McCabe of said profits should be less than at the rate of $1,500 per annum, the plaintiff should receive compensation for his services to March 1st, 1871, at the rate of $1,500 per year; and if they shall further find that the defendant, at the same time, also promised and agreed with the plaintiff as aforesaid, that the plaintiff should, on the 1st of March, 1871, become a partner with the defendant and said Bowen in their business for one year certain, and receive one-third of the profits of said business; and if they shall further find, that in consideration of the said promises of the defendant to employ the plaintiff until the 1st of March, 1871, and at that time to admit him as a partner, the plaintiff did give up his employment under said Neale, and did enter the service of said defendant and said Bowen as proposed; and if they shall further find that the plaintiff continued in the service of the defendant and Bowen until he was discharged and removed therefrom by the defendant, and that the plaintiff, before the institution of this suit, offered and tendered to continue to serve said defendant and Bowen until the 1st of March, 1871, and then to become a partner in said business under the agreement aforesaid, but that the defendant, before the institution of this suit, denied that there was any such agreement between himself and the plaintiff, as is above set forth, and refused to permit the plaintiff to continue in the services of defendant and Bowen until the 1st of March, 1871, and then become a partner in

said business as aforesaid, and required the plaintiff to leave the employment of said defendant and Bowen, and forbade him to be and remain in the store in which said business was conducted, and denied that the plaintiff was entitled to become a partner in said business from March 1st, 1871, and refused to receive him as such when that time should arrive; and if they shall further find that the defendant did not, at any time before March 1st, 1871, retract his said action towards the plaintiff, and offer to receive him again into the employment of himself and said Bowen until the 1st of March, 1871, and then to admit him as a partner in said business as aforesaid, then the plaintiff was entitled to institute this suit at the time it was brought, to recover as for a breach of the entire contract above required to be found.

2d. If the jury find the facts in the first prayer, then the plaintiff is entitled to recover, unless the jury shall find that the acts of the defendant towards the plaintiff, therein set forth, were occasioned by some substantial incompetency or unfitness or misconduct on the part of the plaintiff, occurring after the inception of the contract, or by reason of the defendant, after the inception of the contract, acquiring a knowledge of some unfitness or disqualification of the plaintiff to perform said contract on his part, unknown to the defendant at the inception of the contract.

3d. If the jury find the facts in the plaintiff's first prayer, the defendant had no right to terminate said contract without compensation to plaintiff, merely because the defendant believed that said contract would not be profitable.

The defendant offered the eight prayers following:

1. The writ in this action having been issued prior to the 1st of March, 1871, the question of damages for the alleged refusal of the defendant to take the plaintiff into partnership on that day, under the contract to that effect alleged and sought to be set up, is not before the jury for consideration.

(2. Prayer withdrawn.)

3. If the jury shall find from the evidence that the plaintiff was employed by the defendant on trial, the defendant had a right to discharge him at pleasure, and the plaintiff can recover no damages for such discharge.

4. If the jury shall find from the evidence that the defendant's taking the plaintiff into partnership was to depend upon its being satisfactory to him to do so, on the 1st of March, 1871, the plaintiff is not entitled to recover any damages for the refusal of the defendant so to take him.

5. Even if the jury shall find that the defendant employed the plaintiff until the 1st of March, 1871, to act as superintendent and otherwise in the store on Gay street, without any stipulation that the defendant might discharge him for incapacity, misconduct or inattention, the defendant still had the lawful right to discharge him, if the jury shall find that he was incapable of discharging the duties so prescribed, or was inattentive thereto, or negligent thereof, or failed otherwise suitably and faithfully to comply with his obligations.

6. Even if the jury shall find that the defendant agreed to take the plaintiff into partnership on the 1st of March, 1871, as alleged and sought to be proven by the plaintiff, the defendant had still the lawful right to refuse to do so, if the jury shall find that the conduct of the defendant in the intermediate time was such as to shew that he was incapable of discharging the duties which he was to perform in such partnership, or was so neglectful or careless, or of such habits and conduct as, in the opinion of the jury, would have rendered such partnership a failure for the purposes in contemplation of the parties in its formation.

7. That there is no evidence in the cause of any request or demand addressed by the plaintiff to the defendant to take him into partnership on the 1st of March, 1871, or of any tender of his readiness to enter into such partnership, or any refusal of the plaintiff to take him into the same, and the plaintiff cannot therefore recover any damages on account of any alleged failure or refusal of the defendant so to do.

8. That even if the jury should find for the plaintiff under the Court's instruction, and should deem it proper under said instructions to find damages for the plaintiff for breach of the alleged contract to take the plaintiff into partnership on the 1st of March, 1871, the jury are nevertheless not authorized to give any greater damages for the breach of said contract than one-third of the net profits of the business for one year from that period, less such amount as the jury may find that the plaintiff has otherwise earned, or might or ought, by due and reasonable industry and diligence, to have earned during such part of said year, as has already elapsed, and may and ought so to earn during the remainder thereof, in the judgment of the jury.

The defendant excepted to the first prayer of the plaintiff, because there was no evidence to support it in several particulars:

1st. There is no evidence in the cause that the withdrawal of the plaintiff from the service of Neale was any part of the consideration of the agreement or understanding between the plaintiff and defendant, or was involved in the same in any other way than that the plaintiff could not possibly go into Dugan's service without going out of Neale's—the only consideration proven being the engagement of Anderson on the one side to render certain services, and the agreement of Dugan on the other side to take him into his service, at a certain salary, till March 1st, 1871, and admit him into partnership on that day.

2d. There is no evidence whatever in the cause that the plaintiff, at any time before the institution of this suit, tendered himself ready to the defendant to become a partner in business with him on the 1st of March, 1871, or that the defendant denied, before the institution of this suit, that the plaintiff was entitled to become a partner in said business from March 1st, 1871, or refused to receive him as such when that time should arrive.

The Court granted the first and third prayers of the plaintiff, and rejected his second prayer as offered, but granted it

subject to the qualification contained in the defendant's third, fourth, fifth and sixth prayers, provided the jury should find the hypothesis of facts contained in said prayers of the defendant.

The Court granted all the prayers of the defendant but the first and seventh, which it refused, and the second, which was withdrawn. To the rejection of his first and seventh prayers, and to the granting of the plaintiff's prayers, the defendant excepted.

A verdict was rendered in favor of the plaintiff for $2,000, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, GRASON, MILLER and ALVEY, J.

*T. Wallis Blakistone* and *S. Teackle Wallis*, for the appellant.

The question proposed to Mr. Bird should not have been allowed, and his answer to it was not proper to go to the jury.

The testimony, if proper in itself, was not admissible at the stage of the cause when it was offered, and after the course which the proof had taken. It is perfectly clear law, now, that if the plaintiff, instead of waiting till the defendant has closed, to produce evidence in reply, thinks proper to anticipate the defence and repel it in advance, he must exhaust his proof on the point anticipated, and will not be permitted to return to the same subject after the defence has been heard. 1 *Sharswood's Starkie*, 552, (*top ;*) 1 *Taylor on Ev.*, sec. 357.

In the present controversy, the appellee might have contented himself, if he had chosen, with proof of the contract and his fulfilment of it, followed up by proof of breach and damages. This was his case. He was under no obligation to prove his character, capacity or efficiency till the defence had assailed them. He chose to do otherwise. He proved in chief that he was a person of large experience and much skill

in his business, and that his conduct and attention to duty had commanded the approbation of his employer, Mr. Neale. He further proved that he was in every way competent for the duties he assumed to discharge, and that the appellant knew his qualifications and habits perfectly. He might then have proved, with equal propriety, and in like manner, (if it were admissible at all,) that his qualifications and habits had been as satisfactory to Mr. Bird as to Mr. Neale. But he did not. He finished his general evidence on that point without calling Mr. Bird, and he left himself no right to rebut any general proof to the contrary on the part of the defence. He retained only the right to rebut particular facts which the defence might set up *de novo*. The defence proceeded to set up no new particular facts, (pertinent to the present question,) except those of actual misconduct. These the appellee had the right to rebut, and he did give evidence tending to rebut the testimony of the appellant's witness, Fisher, by which his (appellee's) proof of his deportment at Neale's had been contradicted. But that testimony was itself responsive proof on the part of the appellant, and it was confined to the appellee's conduct *at Neale's*, and nowhere else. Proof of the appellee's behavior *at Bird's* was, therefore, simply nothing in the way of rebuttal, and the Court's adjudication that it was competent to show that the appellee had been a faithful and efficient clerk at Bird's, because his character in the same particulars while at Neale's had been impugned, was, with great respect, a plain *non sequitur*.

But the testimony, in itself, was altogether inapplicable to the issue. It was not proof of general character or reputation, but of particular facts occurring or existing ten years before the facts in controversy. The appellant had not attempted to assail the appellee's fitness or habits by general proof, nor by proof of facts anterior to the period in controversy, except in the single point touched by Fisher's testimony, and that was in contradiction of facts set up affirmatively in chief by the appellee. Whether the appel-

Dugan *vs.* Anderson.

lee was sober or drunken, capable or incapable, at Bird's, before the war, had nothing to do with the case, and was applicable to no issue that had been raised in it. The proof should have been excluded therefore as, *per se*, irrelevant and inadmissible.

The appellee's first prayer, which was granted, allowed the jury to make two assumptions, viz:

*First*: That it was part of the agreement between the parties that "the plaintiff would give up his employment with Neale," and that he did so.

*Second*: That the plaintiff, before suit brought, tendered himself to the defendant to become his partner from March 1st, 1871, but the defendant refused to permit him to become his partner from that time, and refused to receive him as such when that time should arrive.

The appellant insisted that there was no evidence to support the said assumptions, or either of them, and filed his several objections to the prayer on that ground:

1st. There was no proof in the cause that the appellee's leaving Neale was any part of the contract in controversy, or had any connexion with it further than arose from the impossibility of the appellee's being in two places at once. He could not go to Dugan without going from Neale. The evidence, it is believed, will clearly maintain this objection. Nor could the appellee's leaving Neale have been properly put in proof. It had nothing to do with the issue. The appellee agreed to go to the appellant on certain terms, and he sued because those terms, as he alleged, were not complied with. He did not sue for his loss from leaving Neale, but for what he was to have had and ought to have received from Dugan. The eighth prayer of the appellant, which was granted without dispute, defined properly the limit and measure of his damages. The matter of leaving Neale, as introduced into the first prayer of the appellee, was consequently irrelevant, calculated to mislead the jury and withdraw their attention from the true points in issue and to set

up a matter of aggravation which was aside from the merits of the controversy. Its introduction, in itself, should have caused the prayer to be rejected, even if otherwise unobjectionable.

2d. There was no proof that the appellee tendered himself as partner, &c., or was refused, as the prayer assumes. This point is raised by the appellant's seventh prayer, as well as by the objection heretofore referred to.

The Court will observe that the contract set up by the appellee was to employ the appellant as clerk till March 1st, 1871, and then take him for a year into the partnership existing between himself and Bowen. The suit was brought on the 5th of January, 1871, three months before the time for the contemplated partnership arrived, and of course before the appellee could possibly tender himself ready to enter into it in fact. The parties quarrelled in December, 1870, while the employment of the appellee continued as clerk, and the appellee swore that the appellant then notified him that he " desired no further business relations with him." Matters becoming aggravated, the appellee swore that by the advice of counsel he visited the appellant about the 31st of December, 1870, and told him he was ready to perform his part of the contract, and wanted to know whether the appellant was ready to perform his. The appellant swore he had no contract with him. The appellee replied that he had, and that he (appellee) was prepared honorably to carry it out.

There is not a particle of proof on either side, that the appellee at any time signified his readiness to enter into the proposed partnership; that appellant himself alluded to it; or that anything was the subject of discussion between them except the determination of the appellant to discharge the appellee from his service as clerk, and the determination of the appellee not to be discharged.

The prayer is further believed to be vicious in its instruction that the plaintiff, upon its hypothesis of facts, was entitled to institute the suit at the time it was brought, to

recover as for a breach of the entire contract, &c. The proposition intended to be put, it is presumed, was, that on the theory of the prayer, the suit on the entire contract was not premature. As the prayer stands, however, it asserts the right to sue to recover for breach of a contract, without requiring the jury to find that the plaintiff had damage from its being broken. The prayer should have concluded "then the plaintiff is not precluded by the fact that this suit was instituted before the 1st of March, 1871, from recovering as for a breach of the entire contract above required to be found, if the jury shall find that the plaintiff was injured by such breach."

The second and third prayers of the appellee must fall with his first, if the latter be found erroneous, inasmuch as they rest on the same faulty assumption of facts.

The appellant's first prayer asserts, in direct antagonism to the proposition intended to be set up by the appellee's first prayer, that as the action was brought prior to March 1st, 1871, the question of damages for refusing to take the appellee into partnership on that day, was not before the jury.

The contract in controversy was from its terms and its nature separable and apportionable, and not entire, and whether it was entire or separable, it was not competent for the appellee to recover any damages for an alleged breach of that part of it which was not to be performed, and could not be performed, until after action brought. A repudiation of one part of it was not necessarily, nor in law, a repudiation of the whole of it, and furnished no ground of suit as for an entire breach. It would have been carrying the doctrine of the English cases far enough to have allowed the appellee to sue after the 1st of March, 1871, and before the expiration of the year, for damages which could only be ascertained when the year was over. But a contract for a future personal association, such as a partnership, the performance of which would have been rendered impossible by the death or per-

sonal disqualification of either party before the period named, can hardly be held enforcible or broken until that period has been reached. Otherwise we have the anomaly of damages given for the non-formation of a partnership which might never have come to be formed, and which, if formed, might have resulted in loss rather than in profit. 2 *Parsons on Contracts*, 517, 521; 2 *Smith's Lead. Cases*, 55, *et seq.*; *Rodemer vs. Hazlehurst*, 9 *Gill*, 294; *Kercheral vs. King*, 44 *Missouri*, 401; *Taylor vs. Laird*, 25 *L. J.*, (*Exch.*,) 329; *Sedgwick on Dam.*, 258, (*marg.* 229;) *Philpotts vs. Evans*, 5 *M. & W.*, 475; *Ripley vs. McClure*, 4 *Exch.*, 359; *Frost vs. Knight*, 5 *Exch.*, (*L. R.*) 322; *Greenway vs. Gaither*, *Campbell's C. C. Rep.*, 227.

*Charles Marshall*, for the appellee.

Under the contract set forth, and upon such a rescission of it as is alleged in the first prayer of the plaintiff, and supported by the evidence on the part of the plaintiff, the right of action as for an entire breach accrued at once, and the plaintiff was not bound to wait until March 1st, 1871, to bring suit.

The contract was one and indivisible. The consideration for the plaintiff's action was not merely that he should be employed, until the 1st of March, 1871, at a salary, but that he should be so employed, *and* be taken as a partner at that time, the latter being as much a part of the consideration promised him for entering the service of the defendant as the former. Under such a contract as that alleged in the prayer, the conduct of the defendant was a breach which gave a right to an immediate action.

In such a case the plaintiff had an inchoate right to the performance of the bargain, at the time stipulated, and a right in the meantime to have the contract kept open as a subsisting contract. He could deal with the rights acquired under it in various ways for his advantage. On the other hand, if it be held that he cannot sue until the time fixed for

taking him into partnership has passed, he can do nothing in the interval between his removal by the defendant and the 1st of March, which would disable him from tendering himself ready to form the partnership at that time. He would remain bound under a contract which the defendant claims the right to repudiate. *Hochster vs. De la Tour*, 20 *E. L. & Eq. Rep.* 157, 160; *The Danube and Black Sea Company vs. Xenos*, 11 *C. B. Reps.*, 152, (103 *E. C. L. R.* 151;) *Avery vs. Bowden*, 5 *Ellis & B.* 714, 728, (85 *E. C. L. R.*;) *Goodman vs. Pocock*, 15 *Q. B.* 576, (69 *E. C. L. R.*;) *Emmens vs. Elderton*, 4 *House of L. Cases*, 624; *Frost vs. Knight*, 20 *Weekly Reporter*, 471.

This is a decision of the Court of Exchequer Chamber, reversing a decision of the Court of Exchequer, found in 5 *Court of Exchequer*, 322 (*Law Reports*,) and distinctly adopting the law as laid down in *Hochster vs. De la Tour*. *Crabtree vs. Messersmith*, 19 *Iowa*, 180; *Addison on Contracts*, 974; *United States vs. Speed*, 8 *Wallace*, 84; *Masterton & Smith vs. Mayor, &c., of Brooklyn*, 7 *Hill*, 62.

There is a special exception to the plaintiff's first prayer, upon the ground that there was no evidence that the withdrawal of the plaintiff from the service of Neale, was any part of the consideration of the agreement between plaintiff and defendant. In reply to this it may be said, that, so far as the plaintiff's first prayer is concerned, it would make no difference if there had been no evidence that the fact of the plaintiff leaving Neale was part of the consideration of his contract.

That prayer requires the jury to find all the elements of a contract, of which, it is conceded, that there was evidence, namely, the engagement of the plaintiff on the one hand to render certain services, and of the defendant on the other to employ him at a salary, and take him into partnership on the 1st of March. If the jury found such a contract, and also found the refusal of the defendant to be bound by it, as set forth in the prayer, the right of action accrued immediately

on such refusal, and all that the prayer states about plaintiff leaving Neale's employment is surplusage.

But there was positive proof that the fact that the plaintiff was to give up his place at Neale's, was part of the consideration on his part, for the promises of the defendant to him.

The plaintiff's second prayer was granted, but subject to the qualifications imposed upon it by the third, fourth, fifth, and sixth prayers of the defendant, all of which were granted. The effect of these prayers combined, gave the defendant every thing he could ask.

MILLER, J., delivered the opinion of the Court.

We have to deal in this case simply with the questions of law presented by the two exceptions contained in the record. The jury have passed upon the conflicting testimony.

The suit was instituted by the appellee against the appellant on the 5th of January, 1871, and was tried in October of that year. No question arises upon the pleadings. The plaintiff's ground of action as presented by his first prayer is, in substance, that in the summer of 1870 a contract was entered into between the parties, by which the defendant agreed to employ the plaintiff as clerk in his store at a salary of not less than $1,500 *per annum* until the 1st of March, 1871, and then to receive him as partner in his business for one year certain, and allow him one-third of the profits; that in pursuance of this promise and agreement by the defendant, the plaintiff gave up his then situation and employment, in which he was receiving $2,000 *per annum*, and entered into the service of the defendant as proposed, and continued therein until discharged and removed therefrom by the defendant; that the plaintiff, before the institution of this suit, offered to continue to serve the defendant until the 1st of March, 1871, and then to become a partner in the business under the agreement aforesaid, but the defendant, before suit brought, denied there was any such agreement between himself and the plaintiff, and refused to permit the plaintiff to

continue in his service until the 1st of March, 1871, and required him to leave his employment, and forbade him to be and remain in the store in which said business was conducted, and denied he was entitled to become a partner therein from that date, and refused to receive him as such when that time should arrive. The prayer, after leaving to the jury to find these facts, and also that the defendant did not at any time before the 1st of March, 1871, retract his action towards the plaintiff and offer to receive him again into his employment until that period, and then to admit him as partner in the business as aforesaid, asserts, as a legal proposition resulting therefrom, that the plaintiff was entitled to institute the suit at the time it was brought, and to recover as for a breach of the *entire contract* above required to be found.

The defendant's first prayer denies the right of the plaintiff to recover damages for the alleged refusal of the defendant to take the plaintiff into partnership on the 1st of March, 1871, under the contract alleged and sought to be set up, because the action was instituted prior to that time. The proposition thus announced by the defendant's prayer is a denial of the law of *Hochster vs. De la Tour*, 20 *English L. and Eq. Rep.*, 157, and of the English cases that have followed and sanctioned that decision. That case was decided in 1853, and gave rise to a controversy in the English Courts in which their most·eminent Judges have participated. It may be doubted whether the controversy is yet ended and the law of England in respect thereto finally settled. No decision upon the subject has yet been made by the House of Lords. The latest decision in the highest Court to which the question has been taken, is that·of *Frost vs. Knight*, decided in the Exchequer Chamber on the 8th of February of the present year. That case was heard before and decided by Chief Justice COCKBURN and BYLES, KEATING and LUSH, Judges, who, without dissent, reversed the judgment of the Court of Exchequer by Chief Baron KELLY and CHANNELL, B., and sustained and affirmed the law of *Hochster vs. De la Tour*.

Dugan *vs.* Anderson.

The principle of this decision in cases to which it has been held applicable, is, that there is a breach of the contract when the promissor repudiates it and declares he will no longer be bound by it. It is said the promissee has an inchoate right to the performance of the bargain which becomes complete when the time for performance has arrived. In the meantime he has a right to have the contract kept open as a subsisting and effective contract. Its unimpaired and unimpeached efficacy may be essential to his interests. His rights acquired under it may be dealt with in various ways for his benefit[8] and advantage. Of all such advantages the repudiation of the contract by the other party, and the announcement that it never will be fulfilled, must of course deprive him. It is therefore quite right to hold that such an announcement amounts to a violation of the contract *in omnibus*, and that upon it the promissee, if so minded, may at once treat it as a breach of the entire contract and bring his action accordingly. The contract having been thus broken by the promissor, and treated as broken by the promissee, performance at the appointed time becomes excluded, and the breach, by reason of the future non-performance, becomes virtually involved in the action as one of the consequences of the repudiation of the contract; and the eventual non-performance may therefore, by anticipation, be treated as a cause of action, and damages be assessed and recovered in respect of it, though the time for the performance may yet be remote. It is obvious that such a course must lead to the convenience of both parties, and though decisions ought not to be founded on grounds of convenience alone, they yet tend strongly to support the view that such an action ought to be admitted and upheld. By acting on such a notice of the intention of the promissor, the promissee may in many cases avert, or at all events materially lessen the injurious effects which would otherwise flow from the non-fulfilment of the contract; and in assessing the damages for breach of performance, a jury will of course take into account whatever the plaintiff has done or has had the

means of doing, and, as a prudent man, ought in reason to have done, whereby his loss has been, or would have been, diminished.

This in substance is the reasoning upon which such actions have been sustained by the English Courts. Most masterly arguments have been made at bar in this case, founded both in reason and authority, urging us on the one hand to adopt, and on the other to repudiate this as the law of Maryland. All the authorities discoverable by the research of eminent counsel, have been presented, reviewed and pressed upon our attention. But we do not feel ourselves justified in deciding a question of this importance, unless it be clearly presented by the record, and becomes essential to the determination of the very case before us. When so presented we shall be prepared, as it will be our duty, to determine it. But in the present record there is a question beyond and outside of *Hochster vs. De la Tour*, that is decisive of this case, and upon which in our opinion its decision must rest. The law of *Hochster vs. De la Tour*, relates simply to cases where there is a pre-contract for future services, or the performance of some act or duty at a future period, and where performance cannot be commenced, and was not by the contract contemplated, until that period arrives, and where the promissor prior to that time announces his intention not to abide by the contract. But in this case performance of the contract had been commenced and the plaintiff was discharged by the defendant and prevented from further executing it; and suit was not brought until after this discharge, though before the time for performance of that part of the contract relating to the partnership had arrived. The defendant broke up the contract while it was being performed by the plaintiff, and the action was not commenced until after this breach. In this respect there is a broad distinction between the case before us and that of *Hochster vs. De la Tour*. It is an ancient and familiar rule of law that only one action can be maintained for the breach of an entire contract, and the judg-

ment obtained by the plaintiff in one suit may be pleaded in bar of any second proceeding. *Sedgwick on Damages*, 224. But the difficulty is to determine in what cases the contract is entire. In determining this question the Courts must be guided by a respect to general convenience, and by the good sense and reasonableness of the particular case. Where an agreement embraces a number of distinct subjects, which admit of being separately executed and closed, the general rule is that it shall be taken distributively, and each subject be considered as forming the matter of a separate agreement after it is so closed. In one sense the contract before us-was in its nature and terms separable and apportionable, that is, its separate parts, the services as clerk, and the partnership, were capable of separate execution, and must have been performed consecutively in order of time. But in respect to the intention of the parties gathered from the facts presented by the plaintiff's prayer, it was in our opinion to be entire and indivisible. The consideration for the plaintiff's action in entering into it was not merely that he should be employed until the 1st of March, 1871, at a salary, but that he should be so employed *and* be taken as a partner at that time for a year certain. The latter was as much a part of the consideration promised him for entering the service of the defendant as the former, and the conduct of the defendant as stated in the prayer, in our judgment, constituted a breach which gave an immediate right of action and entitled the plaintiff to recover damages, in the language of his prayer, as for a breach of the entire contract.

Such, in our opinion, is the true construction of this contract and the right of the plaintiff ensuing upon its alleged breach. The case bears a close analogy to that of *Masterton & Smith vs. Mayor, &c., of Brooklyn*, 7 *Hill*, 61, where the plaintiffs contracted, in January, 1836, with the defendants to furnish all the marble necessary for a certain public building then about to be erected by the defendants for which they were to pay a specified sum in instalments as the work pro-

gressed. The plaintiffs entered into the performance of this contract and furnished marble thereunder until July, 1837, when the defendants suspended operations on the building and refused further to perform on their part, The contract could not have been fulfilled by the plaintiffs, even if they had been allowed to prosecute the work without interruption, before 1842. In 1840 they brought an action against the defendants founding it upon the breach which occurred in 1837. The action was not only sustained as well brought at that time, but the plaintiffs were allowed to recover in respect to so much of the contract as remained wholly unperformed at the time of the breach, the difference between what the performance would have cost them and the price the defendants had agreed to pay, estimating the former by the price of labor and materials at the time of the breach. All the Judges held that the contract being broken before the time of full performance the plaintiffs might elect to consider it in that light, and were not bound to wait till the period had elapsed for the complete performance of the agreement nor to make successive efforts of performance in order to recover all their damages, but might regard the contract as broken up so far as to absolve them from making further efforts to perform and recover full damages as for a total breach. So in *Clossman vs. Lacoste,* 28 *Eng. L. & Eq. Rep.,* 140, where an agreement was made that the plaintiff should enter into the employment of the defendant for the sale of wines on commission, the agreement to continue for five years, and the defendant guaranteeing the plaintiff £600 *per annum* as a *minimum* revenue from the business during the continuance of the agreement, it was held that the plaintiff might sue in any one year during the continuance of the agreement for breaches in any former year, but if there was an *entire dismissal* from the service before the expiration of the agreement, the plaintiff ought to include in one action the *whole gravamen* he would suffer by such breach of contract. The present case, in our judgment, falls within the rule of these

decisions and others of similar import, and the law of *Hoch-ster vs. De la Tour* is not necessarily involved in its determination. It follows there was no error in the rulings rejecting the defendant's first prayer and granting the first prayer of the plaintiff, in so far as the legal propositions they contain are concerned.

The record shows two special objections were taken in the Court below to the plaintiff's first prayer, on the ground there was *no evidence* to support certain facts thereby left to the finding of the jury. In reference to these, it suffices to say that we have examined the testimony embodied in the exceptions, and are satisfied there is proof from which the jury might have found, or legitimately inferred, the facts of which it is thus objected there was no evidence. What has already been said, also demonstrates the correctness of the ruling rejecting the defendant's seventh prayer. No objection was made in argument to the granting of the plaintiff's third prayer, that the defendant had no right to terminate the contract merely because he believed it would not be profitable; and this ruling is undoubtedly correct. The plaintiff's second prayer, that if the jury found the facts stated in his first prayer, then he is entitled to recover, unles the jury shall find that the acts of the defendant towards him therein set forth, were occasioned by some substantial incompetency or unfitness or misconduct on the part of the plaintiff, occurring after the inception of the contract, or by reason of the defendant's acquiring after that time, knowledge of some unfitness or disqualification of the plaintiff to perform the contract on his part, unknown to the defendant at its inception, was granted, but with the qualifications contained in the defendant's third, fourth, fifth and sixth prayers, which were also granted. The defendant's eighth prayer, as to the measure of damages for the breach of the contract in refusing to take the plaintiff into partnership on the 1st of March, 1871, was likewise granted. In respect to the law of the case, save in regard to the disputed questions already decided,

it was stated as favorably for the defendant as he could have asked. We find no error in the rulings in this particular; and this disposes of the second exception.

The first exception was taken to the ruling allowing a question to be asked the witness Bird, and the admission of his answer thereto as evidence to go to the jury. Whether this ruling, as stated in the record, was matter of pure dis-·cretion in the Court below, irreviewable here, is a question we do not propose to decide. If the revisory power belongs to this Court, still in matters of this kind it must appear the ruling was manifestly wrong, and has occasioned substantial injustice. The general rule is that the plaintiff first adduces evidence to support the issue which he is bound to prove, reserving his right to rebut his adversary's proof if he establishes a *prima facie* case with respect to the issues which lie upon him. If however, the plaintiff at the outset thinks fit to call any evidence to repel the defendant's case, he will not in general be permitted to give further evidence in reply, for if such a privilege were allowed to the plaintiff, the defendant in common justice might claim the same, and the proceedings would run the risk of being extended to a very inconvenient length. 1 *Taylor on Evidence, sec.* 357; *Sharswood's Starkie on Evidence,* 552. But in deciding upon the admissibility of evidence called in reply, regard must be had to the circumstances of the individual case, and considerable latitude will necessarily be granted to the judge in the exercise of his discretion. 1 *Taylor on Evidence, sec.* 359.

It appears that the plaintiff after offering evidence tending to establish the contract alleged, proved that he faithfully and efficiently, in all particulars, discharged his duties under it as long as he was allowed to execute it. He also proved that the engagement of the defendant to take him into his employment, first at a salary, and then to receive him as a partner, was absolute and not in any way dependent upon defendant's wanting him or not, or of his being satisfactory to the defendant, that he was not taken on trial, and his being

taken into partnership was not to be a matter of contingency; that defendant knew his qualifications and habits perfectly, having been intimate with him for many years, and knew what his position with Neale, his former employer, was, and what salary he was receiving from Neale and what Neale's opinion of him was, and expressly waived in advance all claim to make the continuance of his employment and the taking him into partnership dependent upon his being found satisfactory. He further proved he was in every way competent for the duties he assumed to discharge, and discharged them faithfully and fully. All this testimony came from the plaintiff himself as a witness, and in our opinion it does not amount to such anticipation of the proof to be offered in defence on the ground of his *bad habits and incompetency,* as ought, in the proper exercise of a sound discretion by the Court, to preclude him from replying to the *specific proof* adduced by the defendant in that particular. That proof was in substance, that while the plaintiff was in the employ of Neale (where he had been since 1861) he was in the habit of drinking, and was more or less under the influence of liquor much of his time during that period, so as to render him unfit for business, and incapable of discharging his duties, and was negligent and inattentive. The plaintiff was allowed without objection (and properly so) to reply to this by offering evidence tending to show that while he was at Neale's, he attended to his duties diligently and faithfully. Up to the time he left Neale he had been for many years in the employment of the witness Bird. We see no good reason why he should not be allowed to prove in reply to this proof of bad conduct, bad habits and incompetency, that all the while he was in Bird's employ, *where he continued up to the very day he went into the employment of Neale,* that he was capable, efficient, attentive to his business and of unexceptionable habits. No stringent rule of evidence or practice forbids it. Nor did this proof *in its entirety,* coming down as it does to the very day he left Bird and went to Neale, relate to a

period so distant and remote from that in respect to which the defendant had offered proof of incompetency and bad habits, as to make it altogether irrelevant and therefore inadmissible on that ground. We cannot therefore reverse the ruling in this exception.

*Judgment affirmed.*

(Decided 21st June, 1872.)