# NORTH BROS. & STRAUSS *vs.* JEREMIAH D. MALLORY.

*Construction of a Contract for the Erection of an Engine and Boiler— Failure to Comply with Specifications—Offer to Supply New Engine —Reasonable Time of Performanae—Modification of Contract—Instructions—Motion to Exclude Evidence Admitted Without Objection.*

A written contract between plaintiff and defendants, made in November, 1899, provided for the erection by the plaintiff in defendant's factory of a good second-hand engine of 45 horse power, with a tubular boiler and attachments.   After the work was begun defendants complained of the boiler that had been furnished and other alleged defects and the parties modified the contract by agreeing that the plaintiff should put in a new boiler, at an increased cost, to be made so as to pass the inspection of a casualty company and to sustain a pressure of one hundred pounds to the square inch.   Plaintiff ordered a new boiler to be made and subsequently defendants required that it be made capable of sustaining 130 lbs. to the inch.   To this plaintiff did not agree.   The engine put in by the plaintiff did not develop the required 45 horse power, and he offered to furnish a new one without extra charge.   In February, 1900, before either the new boiler or the new engine had been erected, defendants rescinded the contract alleging numerous breaches by the plaintiff and refused to allow him to proceed further.

In an action to recover for the work already done and damages for the breach of the contract.  *Held,*

1st.  That the plaintiff was bound to do the work contracted for within a reasonable time, and if he first put up an engine that was not in conformity with the contract, he was not entitled, two months after the contract was made, to take out that engine and substitute another, without defendants' consent, when to do so would so delay the work as to make its completion within a reasonable time impossible.

2nd.  That whether the delay so occasioned in completing the work would be unreasonable or not is a question of law for the Court and not of fact for the jury.

3rd.  That consequently it was error to instruct the jury that if the plaintiff, after finding that the engine first supplied by him did not develop the stipulated power, offered to furnish a new engine but the defendants refused to allow him to proceed, then the plaintiff is entitled to recover for the work done and materials furnished.

4th.  That if the parties subsequently agreed to substitute a new boiler in the place of the one first supplied, then the plaintiff's right to recover is not defeated because the boiler originally supplied was not in conformity with the contract.

5th.  That if the plaintiff was not in default and the defendants arbitrarily stopped the work, then the plaintiff is entitled to sue for a breach of the entire contract.

When a document purporting to be a certificate of a State Inspector has been admitted in evidence without objection, the other party cannot, after the close of the evidence, move the Court to exclude the certificate from the consideration of the jury on the ground that the signature of the Inspector had not been proved, because objections to the admissibility of evidence must be promptly made.

Appeal from the Superior Court of Baltimore City (Dob-ler, J.)

*Plaintiff's 1st Prayer.*—If the jury find that the plaintiff and defendants entered into the written contract of Nov. 29, 1899, and thereafter the plaintiff proceeded to erect in the basement of defendants' premises at the corner of Lombard and Hanover Sts. the steam plant contemplated therein and employed skilful and competent workmen in and about the construction and erection of the same, and delivered and set up the boiler and engine in good faith believing the same to be as represented in the contract, and that afterwards it was agreed between the plaintiff and defendants that for the sum of three

hundred dollars additional, a new boiler of the same size and dimensions as the old should be substituted in the place of the old boiler, guaranteed to pass the inspection of any casualty insurance company at an allowed pressure of one hundred pounds of steam, and that said boiler was immediately thereupon ordered from the Ames Iron Works, a reputable builder of boilers, and that if the defendants had permitted said boiler to have been constructed and erected, it would have been as represented ; and that afterwards when upon trial it was ascertained that the said 9x12 ball automatic engine would not develop the horse power contracted for, that the plaintiff on or about the 17th day of January, 1900, offered and agreed to furnish the defendants with a new engine of the same make that would develop the horse power contracted for, and asked to be permitted to telephone an order for the same, and otherwise offered and agreed to finish and complete said plant within a reasonable time in all other respects in conformity with said contract of November 29th, and that the said defendants before the work was completed and while it was in process of completion forcibly drove the plaintiff's employes and workmen from the building and hindered and prevented the plaintiff from completing said contract so modified as aforesaid, then their verdict should be for the plaintiff for such sum of money as the jury may find was laid out and expended by the plaintiff for work done and materials furnished by the plaintiff, less the value of the boiler and engine and material returned by the defendants to the plaintiff under the agreement of counsel offered in evidence in this case. (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury shall find that in the midst of and whilst the plaintiff was engaged in fulfilling his contract with the defendants, they refused and would not suffer or permit the plaintiff to finish and complete the same (and that he was ready and willing to complete the same) by driving his workmen and employes from the premises then and from that time the plaintiff's right to recover accrued. (*Granted.*)

*Plaintiff's 4th Prayer.*—If the jury shall believe from the evidence that the plaintiff in compliance with the contract furnished the defendants a second-hand 9x12 ball automatic engine which in good faith he believed would develop forty-five horse power as contracted for, and which being tested when erected upon the premises of the defendants before the completion of the contract was ascertained to be a medium speed instead of a high speed engine and failed to develop the required horse power and thereupon afterwards offering the defendants several other engines that would develop said horse power and over, which were refused by the defendants, the plaintiff on the 17th day of January, while said contract or said contract with modification mentioned in the evidence, was in force, offered to furnish the defendants a new high speed automatic engine of the same size and make that would develop forty-five horse power and over without additional charge, that then the fact that the second-hand engine did not develop the contracted horse power is not such a breach of the contract on the part of the plaintiff as to work a forfeiture of all right of the plaintiff to recover for any work done and materials furnished by him in compliance with the terms of said contract. (*Granted.*)

*Plaintiff's 5th Prayer.*—If the jury shall find that the plaintiff immediately entered upon the fulfillment of his contract with the defendants, and that in order to oblige and accommodate the defendants he worked night and day and on Sunday in erecting said boiler in order that the defendants' building might be heated thereby, and thereafter without unreasonable delay continued the erection and construction of the said plant under the then circumstances surrounding the same until about the 1st day of January, when said work was partly suspended at the instance and request of the defendants and by reason of the fact of the modification of the contract in reference to the substitution of a new boiler for the second-hand one which the defendants requested the plaintiff not to remove until the weather became warmer, and shall further find that subsequently upon complaint by the defendants as to

the character of the work then done, the plaintiff continued with reasonable diligence to prosecute said work until he was hindered and prevented by the defendants from continuing, and that if they should so find, then there was no unreasonable delay upon his part.    (*Granted.*)

*Defendants' 7th Prayer.*—If the jury shall find from the evidence that the plaintiff and defendants entered into a contract as offered in evidence for the supply and erection of certain machinery on the premises occupied by the defendants, and shall further find that said contract was modified by mutual consent in that a new boiler was to be supplied in the place of a second-hand boiler and the price to be paid the plaintiff was to be raised to $2,300, and shall further find that no other modifications of the said contract have been agreed to by the defendants, and shall further find that the plaintiff so performed part of the work that the defendants refused to accept the same, and shall further find that the plaintiff did not supply and erect the machinery according to the material terms of the contract as modified and that the defendants received no benefit from the said work but offered to return said material as fast as they could which the plaintiff agreed to and did so receive material returned according to agreement and then the verdict of the jury must be for the defendants.    (*Rejected.*)

*Defendants' 8th Prayer.*—If the jury shall find from the evidence that the plaintiff and defendants entered into a contract for the supply and erection of certain machinery on the premises occupied by the defendants, and shall further find that the said contract was modified by mutual consent in that a new boiler was to be supplied in place of a second-hand boiler and the price to be paid the plaintiff was to be raised to $2,300, and shall further find that no other modifications have been agreed to by the defendants, and shall further find that said contract as modified contained a condition that the boiler therein mentioned to be supplied was second-hand but in good condition, and shall further find that the boiler furnished and set up was not in good condition, and shall further find that the defendants have not accepted said boiler but have refused

to pay for same, then under the pleadings the verdict of the jury must be for the defendants.    (*Rejected.*)

*Defendants' 9th Prayer.*—If the jury shall find from the evidence that the plaintiff and defendants entered into a contract for the supply and erection of certain machinery on the premises occupied by the defendants, and shall further find that said contract was modified by mutual consent in that a new boiler was to be supplied in place of a second-hand boiler and the price to be paid the plaintiff was to be raised to $2,300, and shall further find that no other modifications have been agreed to by the defendants, and shall further find that said contract as modified contained a condition that the boiler therein mentioned to be supplied was second hand but in good condition, and shall further find that the boiler furnished and set up was not in good condition, and shall further find that the defendants have not accepted said boiler but have refused to pay for same and offered to return the same as soon as it could be replaced by another boiler, then under the pleadings the verdict of the jury must be for the defendants. (*Rejected.*)

*Defendants' 19th Prayer.*—If the jury shall find from the evidence that the plaintiff and defendants entered into an agreement for the supply and erection of certain machinery by the plaintiff on the premises of the defendants, and shall further find that the defendants on or about the sixteenth day of January, nineteen hundred, stopped the workmen of the plaintiff from doing any further work under said contract or any modification of the same, (if the jury shall find such modification) and shall further find that prior to said stoppage of the work (if the jury find same) the plaintiff did knowingly fail to comply with the terms or with any *material* term of said contract either as formed or as modified (if the jury find such modification) up to the point of work reached at the time of the stoppage (if they find such stoppage) then such stoppage by the defendants (if they find such) was a right of the defendants and their verdict must be for the defendants.

Which said nineteenth prayer the Court modified by adding

thereto the following provisional clause : "Unless the jury find that the plaintiff could have corrected the work wherein he had failed to comply with the terms of said contract within a reasonable time for the completion of said contract and did not refuse to do so."

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*John P. Poe.* and *Arthur L. Jackson*, for the appellants.

*Rufus W. Applegarth*, for the appellee.

PAGE, J., delivered the opinion of the Court.

The declaration in this case contains seven counts ; six of them are common counts in *assumpsit ;* the seventh sets out substantially that the plaintiff and defendants agreed in writing that the former should furnish, deliver and erect in the basement of the defendants' building, a steam plant, for which the defendants were to pay the plaintiff $2,000 ; that the said steam plant was to be, one 9x12 ball automatic engine (Erie) 45 horse power, second hand but guaranteed to be in first-class condition, and one horizontal tubular boiler 60 inches diameter 13 ft. long, actual 70-horse power ; the same to be equipped set up and connected as detailed and specified in the written agreement ; that subsequently the said parties further agreed that in lieu of the boiler originally contracted for in the written agreement, the plaintiff should furnish a new boiler, for the sum of $300 additional, " making the total amount of the contract price of said work and material $2,300, which " the defendants agreed to pay, and promised to permit and suffer the plaintiff and his workmen and employes to enter upon their premises and complete the work, and that the plaintiff "did commence and in part perform and furnished a portion of said materials, &c., and expended large sums of money in and about the purchasing of said materials and for work done," &c.; yet the defendants would not permit him to proceed with or complete the work, &c., but wrongfully dis-

charged him and prevented him from completing the work, whereby he lost the profits which otherwise would have accrued to him from the completion of the work, and " the value and price of the work and material actually done and provided." The defendants plead the general issue pleas, and after trial and judgment for the plaintiff have appealed.

There are but two bills of exception. The first raises a question of evidence ; the second brings up for review the action of the lower Court upon the prayers that were severally offered by the parties.

In the first exception, the question presented arose as follows. The plaintiff offered the written contract, which provided among other things that the boiler should be an "horizontal boiler 60 inches diameter, 13 ft. long, actual 70-horse power second hand but in good condition ;" also evidence tending to show that he had delivered on the premises such a boiler. He then offered a paper purporting on its face to be a certificate of the State Inspector to the effect that the said boiler was in good condition and capable of sustaining a pressure of 100 lbs. to the square inch. To the admission of this paper the defendants objected, "unless the plaintiff proposed to follow it up by identifying the boiler furnished by the plaintiff with the boiler mentioned in the certificates." The plaintiff then offered proof tending to prove that "J. C. Smith, the State Inspector," gave the certificate to the plaintiff and that "he saw, examined and tested the boiler again in the basement of the defendants' factory, and that it was the boiler covered by the certificate." The Court thereupon permitted the paper to go to the jury. After much testimony had been taken, and all the evidence on both sides was in, the defendants moved the Court to exclude the certificate from the jury for the reasons, 1st., that there was no identification of the boiler inspected with that furnished by the plaintiff, and 2nd., "because there was no proof of the alleged signature of the State Inspector." The Court overruled the motion, and the defendants excepted. There had been no additional testimony offered between the time of its admission by the Court and that of the entering

the motion.   The motion therefore was nothing else than a request of the Court to review and reverse its previous ruling. That ruling the defendants had permitted to pass without reserving an exception, as they might have done.   If they desired to raise any question as to signature of the Inspector, it was open to them at the time the paper was offered to do so. They should have done so at that time, and it was too late to make the objection after the Court had ruled upon its admission, unless something had intervened that gave them notice of objections of which prior thereto they had had no information.   In *Dent* v. *Hancock*, 5 Gill, 127, this Court said, it was the duty of counsel, if aware of the objections to the admissibility of evidence, to object at the time it is offered, or if unapprised of such objections at the time the evidence had gone to the jury, he must raise his objections within a reasonable time thereafter.   "To allow a greater latitude, as to the time of raising such objections to testimony, might be productive of much inconvenience and injustice."   *Hagan* v. *Hendry*, 18 Md.   188; *Davis and wife* v. *Patton*, 19 Md. 128; *Marfield* v. *Davidson*, 8 G. & J. 213.   We find no error in this ruling of the Court.

The plaintiff offered five prayers, all of which were granted; the defendants, nineteen, of which eight were granted, eight rejected, and two rejected as offered but granted with modifications.   The original written agreement was proved, as set forth in the *narr.*   The plaintiff commenced the work and delivered on the premises a boiler and proceeded to connect it as provided in the agreement.   On the 11th of January, 1900, the defendants wrote to the plaintiff, that "the boiler you have placed in our factory does not come up to the terms of your contract," and in the same letter proceeded to state many other things in which, they claimed, the plaintiff had not complied with the terms of his contract.   There was also evidence tending to show that prior to the date of that letter there had been complaints of the boiler, and that the plaintiff had offered to substitute therefor a new boiler, and install that in the factory at an increased cost to the defendants of three

hundred dollars    On the tenth day of January, 1900, the defendants wrote, "we agree to this on the following conditions," viz. (among others) that the original contract of November 29th, should be still in force except "so far as we now agree to change it ; " no rights to be surrendered under that paper ; the new boiler to be made "according to specifications furnished by the Maryland Casualty Company," copy to be furnished by the defendants ; and the "work of removing the boiler now in, not to be begun until the weather will permit us to run our business without heat in the building ; and must be finished within a reasonable time, say thirty days from time you start to put boiler in." This qualified acceptance of the plaintiff's offer was in turn accepted by him, as will appear from his letter of February 10th. There was also evidence tending to prove that if the plaintiff had been permitted to continue his work, he would have completed it with "due diligence and dispatch," and would have been able to make the alterations and corrections which were incidental to the unfinished state of the work ; and that he had offered to make such alterations and corrections.

The defendants offered evidence tending to prove that the contract, modified as stated, was not completed by the plaintiff according to its terms ; that its completion " was not waived by the defendants nor prevented by them or by their fault," and that they had stopped the work because the " plaintiff knowingly failed to comply with the material terms of his contract." There was also evidence to show that the engine furnished did not come up to the requirements of the contract, in that it did not develop the requisite horse power. The plaintiff in his letter of the 13th of January admitted this, and proposed to install another in its place. He writes, " as the ball engine does not come up to the horse power, which, I supposed it would develop, when my contract was made with you,  *  *  *  I propose to install " in place of it, another (which he describes) " which will give you under 300 revolutions 49 I. H. P. this being 4 indicated H. P. above what I originally claimed for the ball engine." It appears that

negotiations had already been begun and were afterwards continued, having for their object the installation of the new engine ; but they do not seem to have culminated in an agreement.    On February 10th the defendants write : "You wrote us a letter some time ago stating you would put us in a New Erie ball engine 9½x10.    This point also should be settled." "As to accepting any part of the work, and paying a consideration for the same, we cannot do this.    If we give the contract to another, it must be in its entirety.    We know of but two alternatives—one for you to go ahead and finish your work according to the new specifications—the other to rescind your contract and remove your material.    Unless you select between the two in the next few days, we will *concede* that you have chosen the latter and will go ahead and give the contract to another firm."    The plaintiff in his reply to this letter, on the same day, after stating his view of the matters between them, and that the defendants had agreed through Mr. James E. North and Mr. Palmer that "they would only accept" the new engine, subject to the acceptance of the Maryland Casualty Company, says that had he "been allowed to proceed with his contract the new Ames boiler and the new ball engine would have been finished complete and turned over to you long ago"    On 13th February the defendants write him that they cannot accept either one of the offers of February 10th ; that the breaches of his contract are numerous ; that it was then "nearly three months since the work was begun, and as we cannot see that you are now any nearer a conclusion than when you started, we are compelled to cease further negotiations with you."

There was also evidence tending to show that had the plaintiff fully performed the contract as modified, and had furnished the new boiler and engine, he would have lost $300 or $400.

Upon this state of the proof, the Court by the first prayer of the plaintiff instructed the jury that if they found the original written contract, and the modification of the same with respect to the boiler, and that about the 17th January,

1900, the plaintiff offered and agreed to furnish a new engine that would develop " the horse power contracted for and asked to be permitted to telephone an order for the same and otherwise offered and agreed to finish and complete the said plant in all other respects in conformity with the contract of 29th November " and that the defendants prevented him from so doing, then the plaintiff was entitled to recover, for " such sum of money " as was " laid out and expended " by him, less the value of the boiler and engine, which had been returned to the plaintiff under the agreement of counsel, as appeared by the evidence in the case.    Now the contract required that the plaintiff should furnish an engine with an actual horse power of forty-five and to set up the same and connect it, in the manner particularly described.    This was a material part of the contract.    The defendants had the right to require that it be fully performed, and were not bound to accept the work or any part of it, until such an engine had been set up.    If, therefore, the plaintiff installed in the defendants' factory an engine that could not develop the requisite horse power, having failed to perform his contract, he can bring no action to recover either in general or special *assumpsit*, unless he have some legal excuse for his failure to do so.    *Gill* v. *Vogeler*, 52 Md. 666 ; notes to *Cutter* v. *Powell*, 2 Smith's Leading cases, 37 ; *Denmead* v. *Coburn*, 15 Md. 29.

If, on the other hand, the plaintiff, after part performance in the manner required by the contract, was without fault on his part, but was prevented by the act of the defendants from completing his part, he might either treat the contract as still in existence and sue upon it for a breach.    *Dugan* v. *Anderson*, 36 Md. 583; or he might regard the contract as rescinded and recover in general *assumpsit* for what he had actually done.    *Bull* v. *Schuberth*, 2 Md. 57; *Merritt* v. *Penin. Con. Co.*, 91 Md. 453.

In the former case, the damages " would include compensation for the labor done and materials furnished and such further sum in damages as might, upon legal principles, be assessed for the breach of the contract."    *Black* v. *Woodrow*, 39 Md. 217; *United States* v. *Behan*, 110 U. S. 338.

In the latter, where he elects to rescind the contract, and sues in general *assumpsit*, he cannot recover damages for a breach of the contract, either for outlay or for loss of profits, but merely for the value of his services actually performed as upon a *quantum meruit.* If, however, the plaintiff did not put in an engine that conformed to the contract, and was then prevented from proceeding further, he would still have the right to recover in general *assumpsit* for whatever part of the work that has been accepted by the defendants. *Watchman & Bratt* v. *Crook*, 5 G. & J. 263; *Pres. Church* v. *Hoopes*, 66 Md. 603; *Waggaman* v. *Nutt*, 88 Md. 266; *Rodemer* v. *Hazlehurst*, 9 Gill, 294; *Dermott* v. *Jones*, 23 Howard, 220; notes to *Cutter* v. *Powell*, 2 Smith's Lead. Cases, 1; *Denmead* v. *Coburn*, 15 Md. 29.

This prayer is based on the theory that the plaintiff has been without fault, and lays down a rule of damages applicable only to such a case. It fails, however, to require that the jury shall find that the plaintiff did furnish an engine that came up to the requirements of the contract. In lieu of that they are directed that the plaintiff may recover if they find that he *offered* to furnish another engine that would develop the horse power contracted for, upon the theory that the plaintiff, having furnished an inadequate engine, had the right to be permitted by the defendants to enter upon the premises for the purpose of removing the old engine and replacing it with the new one, and that he had this right under and by virtue of the provisions of the contract.

That question may be considered not only in connection with this prayer, but also with the plaintiff's fourth prayer, which announces substantially the same proposition. Neither of these prayers require the jury to find that the defendants ever agreed that the substitution of a new engine should be made by the plaintiff. There was evidence that the defendants had refused to make any new agreement about the matter. The hypothesis of the prayers therefore demands the assumption that it was quite immaterial whether the defendants ever so agreed or not, and that it was sufficient if they found that

the plaintiff made the proposal.    At the time, however, such proposal was made, there had been placed in the defendants' factory an engine  that was conceded to be totally inadequate to measure up to the requirements of the contract.    The contract fixed no time for the completion of the work, and in such case it is implied that it shall be within a reasonable time.    *Coates & Glenn* v. *Sangston*, 5 Md. 130.

The original contract was entered into on the 29th of November, and more than two months had elapsed when the defendants were confronted with a demand that the plaintiff shall be permitted to tear out the engine and replace it with another.  Was such a demand reasonable at that time?  Whether it would so delay the completion of the work as to make the time when the work could be completed so unreasonable as to authorize a recission of the contract, was matter of law for the Court and not matter of fact for the jury.    *Ragan* v. *Gaither*, 11 G. & J. 490.

Neither of these prayers annex any limitations upon the effect of the plaintiff's offer, except the first which leaves the question of reasonableness to the jury.    But aside from these considerations there is nothing in the contract nor (unless the jury find there was an agreement with respect to the substitution) anything in the letters or conversations between the parties that could authorize the plaintiff to enter upon the premises of the defendants for the purpose of tearing out anything that had been put there.    The contract contemplated the installation of a steam plant, and when that was done the plaintiff's right of entry upon the premises to do work would terminate.    Nor is there anything in the contract that contemplates that the plaintiff should have the right to experiment, so that if he failed at first he might make another effort.    If there was a failure again would he have a right to try again, and yet again, if there was another failure?    And if it were unreasonable to hold that he might have an indefinite number of opportunities, upon what principle should he be entitled to more than one?    The evidence shows that the defendants' building was used as a factory, and that the steam plant was

necessary for the conduct of the business.   The defendants in a letter to the plaintiff, on February 10, say, " We have two floors that have been idle since you started your work, and have not been able to formulate our plans," &c.   Under these circumstances it is idle to suppose that when the contract was made it was not contemplated that the plaintiff should furnish the plant within a reasonable time, without the privilege of making a second attempt in case of a failure.   These prayers for the reasons we have stated were both defective, and should have been rejected.

The second and third and fifth prayers of the plaintiff were properly granted.   If as stated in the second the jury found that the parties agreed with respect to the substitution of the new boiler, then the original contract was waived to the extent of the modification but under the evidence no further.   *Howard* v. *W. & S. R. R. Co.*, 1 Gill, 311.

The defendants' first and third prayers were also properly rejected.   The third presented a matter of law for the finding of the jury, in that they were required to find that the failure of the plaintiff was '' not caused by a *legal* excuse."

The fifth prayer directs the jury that if they find the work was not completed ''in accordance with the terms of the contract as modified," that ''under the pleadings" the plaintiff could not recover, unless they find for the plaintiff under the seventh count.   This prayer ignored all the evidence as to defendants' action in prevention of the work.   And if there was part performance in accordance with the terms of the contract, but the plaintiff was prevented by the act or consent of the defendants from performing the residue, he may recover for the work actually done in general *assumpsit.   Rodemer* v. *Hazlehurst*, 9 Gill, 288.

The seventh, eighth and ninth prayers are open to the same objection.   The eighth and ninth prayers are also objectionable because they make the condition of the second-hand boiler the test of the plaintiff's right to recover, whereas there was evidence from which the jury might find that that feature of the contract had been modified, so that the plaintiff had the

right to furnish a new boiler, in substitution of the second-hand one that had been theretofore furnished.

By the eleventh and twelfth prayers the jury were told that the plaintiff would not be entitled to recover if the work done was not "first-class in every respect." It is well settled however that "if there is only a partial failure of performance by one party to a contract for which there may be a compensation in·damages the contract is not put an end to." *Warfield* v. *Booth*, 33 Md. 71.

For the same reason, the modifications of the Court to the defendants' sixth, sixteenth and nineteenth prayers were proper. The fourteenth prayer was improper because of the fact that it ignored all the evidence of the prevention of the work. If without fault of the plaintiff the defendants arbitrarily stopped the work, the plaintiff could regard such conduct on their part as a "violation of the contract in omnibus" and might "at once treat it as a breach of the entire contract and bring his action accordingly." *Dugan* v. *Anderson*, 36 Md. 583. The plaintiff's first and fourth prayers having been improperly granted, the judgment will be reversed and the cause remanded for a new trial.

> *Judgment reversed with costs and new trial awarded.*

(Decided January 16th, 1902.)