# THE AMERICAN TOWING AND LIGHTERING COMPANY *vs.* THE BAKER-WHITELEY COAL COMPANY.

*Conflicting Evidence as to Terms of Oral Contract—Instructions—Action for Compensation Where There Has Been Negligence in Performance of the Services Sued for—Contract for Towing Scows Lost During Voyage—Action to Recover Compensation for Towing Service—Evidence.*

When there is a conflict of evidence as to the exact terms of an oral contract, it is the province of the jury, not to construe the contract, but to find what it really was; and this is ordinarily done by instructions to the jury with hypothetical directions as to the law, according to their finding of the facts.

Where there is a contract for the hire of labor and services, negligence in their performance is not a bar to any compensation therefor, unless the amount of the loss caused by the negligence is greater than the sum agreed to be paid for the services.

If the contract for the hire of labor in connection with a thing be entire, the compensation to be paid after completion of the work, then, if the failure to perform all the services is the fault of the party who agreed to perform, there can be no recovery for a part performance.

The defendant, a towing company, having a contract with the owner of certain scows to tow them from Mobile to Baltimore, made a sub-contract with the plaintiff company by which two of the scows were to be towed by plaintiff's tug from Charleston to Baltimore. This contract was oral, and the evidence of the plaintiff was that it merely chartered its tug to the defendant at $125 per day, to be used for towing. The evidence of the defendant was that the plaintiff, by an entire contract, agreed to tow the two scows from Charleston to Baltimore for $125 per day of the voyage. When the tug and the two scows were off Cape Hatteras, the hawser broke

in a storm, and the scows were driven ashore and lost.   The
evidence was that the hawser was defective and had broken
on two previous occasions in a smooth sea.   The owner of the
scows libelled the plaintiff company for the loss in an ad-
miralty Court, alleging negligence, and obtained a decree
against it.   Plaintiff then brought this action to recover the
stipulated sum per day for the use of its tug from the begin-
ning of its services down to the day of the loss.   *Held,* that the
plaintiff's evidence was legally sufficient to go to the jury,
and that the defendant's prayers denying all right of recovery
were properly rejected.

*Held,* further, that if the jury found from the evidence that the
plaintiff contracted to tow the two scows from Charleston to
Baltimore, and had failed to do so through its own negligence,
then the verdict should be for the defendant.   But if the
jury found that the plaintiff merely hired or chartered the
tug to the defendant for the purpose of towing scows, and
that the negligence of the plaintiff caused the loss of the
scows, then the plaintiff was entitled to recover the price
agreed on for the use of the tug during the time that the de-
fendant retained it, less whatever sum the jury might find
that the defendant lost by reason of such negligence.

*Held,* further, that instructions which do not fully state either
one of these theories of the case, or which assume that the
contract was as claimed by the plaintiff, are defective; as is
also a prayer asserting that the plaintiff was entitled to no
compensation until the scows arrived at Baltimore.

*Held,* further, that it was error to instruct the jury that if the
owner of the scows sued the plaintiff company and recovered
against it on account of the loss, then the plaintiff was entitled
to recover the stipulated compensation for the tug, even if
the jury found that the loss of the scows was due to the negli-
gence of the plaintiff.   This instruction does not require the
jury to find that the decree in the admiralty case was for the
value of the scows delivered in Baltimore, and the defendant
in this suit for the services of the tug had the right to recoup
against plaintiff's claim any loss which it had suffered by rea-
son of plaintiff's negligence, apart from any consideration of
the rights of the owner of the scows.

Admissions made by the secretary of a company operating tugs, to the effect that a certain hawser used in towing was an improper one, are not competent evidence in an action against the corporation.

In an action by a sub-contractor against a contractor for towing scows, to recover for services rendered in the towing, the owner of the scows may be asked what was their value.

A man who has been a sea captain for thirty years and has had experience in towing all over the world is qualified to testify as an expert concerning the sufficiency of a hawser used in certain towing.

When the price to be paid for certain work is fixed by the contract, and there is no question in the case as to refusal to pay it when due, evidence as to a usage concerning the time of payment in such contracts is irrelevant.

*Decided November 19th, 1909.*

Appeal from the Court of Common Pleas (ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER and BURKE, JJ.

*Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellant.

The Dredging Company filed a libel in the District Court of the United States for the Eastern District of Virginia against the tug Britannia in which they sought to hold her liable for the value of the scows, which it was alleged had been lost by the negligence of the tug. This negligence was denied by the owners of the Britannia, and after a full hearing the Federal Court decided that it was a case where those in charge of the tug had been negligent and where there was also negligence on the part of the owners of the scows as the Court found that by reason of leakage they were not in an entirely seaworthy condition. The Court, therefore, held in accordance with the admiralty rule that the tug must pay one-half the loss and a decree was, therefore, entered against

the tug for ten thousand, one hundred and two dollars and twenty-five cents ($10,102.25). This case is reported in 148 Fed. Rep. 495, *The Britannia.* The evidence does not show whether or not this decree was ever paid.

Subsequently this suit was brought by the Baker-Whiteley Coal Company against the American Towing Company to recover compensation for the use of the tug Britannia during the ten days when she was occupied in this transaction in going from Baltimore to Charleston to get the tow and bringing the tow a portion of the way to Baltimore up until the time of its loss. The defense set up to the action was that the Britannia or its owners had done the towing in a careless and negligent manner in that they had not used a sound and proper hawser, but an unsound and rotten hawser; that the unsound condition of the hawser had been brought to the attention of the Britannia's captain by the two breaks which occurred shortly after leaving Charleston; that two new hawsers were on one of the scows and could have been used instead of the rotten nine-inch hawser, and that it was gross negligence on the part of the master of the Britannia to continue with this heavy tow during the latter part of August in a voyage around Cape Hatteras with a hawser which had twice shown its insufficiency. The plaintiff denied the charge of negligence and issue was joined on this question.

At the trial of the case practically all of the testimony taken was in regard to this issue of negligence *vel non.* At the conclusion of the testimony the plaintiff offered four prayers and the defendants eight. The plaintiff's prayers conceded that if the jury found that the loss of the barges was due to negligence on the part of the tug, her master or crew, that there could be no recovery, and the defendant's prayers were drawn on the same theory. The Court below, rejected all the prayers on both sides; the rejection of the plaintiff's prayers being for the very unusual reason that they were too favorable to the defendant, and were in error in conceding that the plaintiff was not entitled to recover if the jury found that the scows were lost by the negligence of the master of

the tug, and the Court thereupon granted an instruction of its own, proceeding upon an entirely different theory from any that had previously been suggested in the case, and practically instructed the jury that on the undisputed facts of the case their verdict must be for the plaintiff for the full amount of the plaintiff's claim, "notwithstanding the fact that they may also find that the loss of said scows was due to the negligence of the plaintiff."

Our contention is that when a contractor is employed to do certain work and does not do that work in a workmanlike and proper manner, but, on the contrary, does it in a negliment manner, thereby causing loss greater than the compensation to be paid him, two consequences follow:

(*a*) The contractor's negligence is a complete defense to any suit brought by him for the recovery of his compensation.

(*b*) The contractor is also liable in an action for negligence either to the contractee or to any third party injured by such negligence.

The Court's instruction proceeds on a directly opposite theory, namely, that when the contractor is sued in an action of negligence, and judgment recovered against him, that he is then entitled to recover the compensation for his work, notwithstanding that the same may have been negligently done, and of no benefit whatsoever. The theory is that the judgment against the contractor punishes him sufficiently for his negligence, and that, therefore, in all subsequent actions his negligence must be treated as made good or atoned for by the judgment. No authority was cited below for this proposition, and we do not believe that any can be found applying any such rule to facts at all similar to those existing in this case. Even if there were any such general rule as outlined above, it could hardly apply to this case for several reasons:

1. The decree rendered against the tug "Britannia" was a decree in favor of the Standard Dredging Company, and was not a decree in favor of the American Towing Company. This latter Company was not even a party to the case and

had no control over it whatever.  The decree was intended at most to compensate the Standard Dredging Company for the loss of its barges.  It did not purport to compensate, and could not compensate, the American Towing Company, which was not a party to the case, for the loss which it sustained by reason of the tug's negligence, that loss being the $25 a day profit which it would have made had the "Britannia" properly carried out the work which its owners undertook to do.

2.  The decree does not purport to be for the full amount of the loss sustained by the Standard Dredging Company, but only for one-half of it under the admiralty rule, which divides the loss where there is negligence on both sides.

3.  There is no proof here that the decree of the Admiralty Court was ever paid, and surely the owners of the tug could not in any event claim that they had in any sense made good their negligence for the injury caused by it without proof that they had actually paid the decree rendered against them.

As to the general proposition under discussion, we think our position is supported by the case of *Applegarth* v. *Robertson,* 65 Md. 493.  That case was an action on a promissory note given in part payment of the purchase money of a house. The vendee set up as a defence that the gable wall was at the time of the purchase defective and unsafe, and that he had been compelled to repair it at a cost exceeding the face of the note.  The vendee also brought an independent suit against the vendor for damages by reason of such defect. The Court says, page 496: "But then again it was pressed in argument, and strongly too, that the appellee was precluded from setting up the defective condition of the wall as a defense in this suit, because he had sued Cone to recover damages on account of the same.  In other words, it was said he could not, in an action to recover the purchase money, set up as a defense the defective condition of the wall, and at the same time sue Cone for damages alleged to have been sustained by reason of his misrepresentations in regard to the wall.  But this position is not, we think, tenable.  The appellee has paid the entire purchase money, except the note

for $250, to recover which this suit was brought, and the
proof shows that he had expended one thousand dollars at
least in rebuilding the wall. He had the right, therefore,
not only to sue Cone to recover damages, which he sustained
by reason of Cone's misrepresentations, but also to set up
the defective and unsafe condition of the wall as a defense
to the suit brought on the note to recover the balance of the
purchase money." ·

Is not this, in principle, exactly the same as the question
at issue here? In the case just cited it was held that the
fact that the defendant had sued the vendor of the house for
damages caused by the defective condition of a wall, did not
prevent this same defendant from setting up the same matter
as a defence in a suit against him for the balance of the pur-
chase money. Applying this to the case at bar, the fact that
there was a suit against the tug "Britannia" for loss occa-
sioned by her negligence should not prevent the defendant
from setting up that same negligence as a defence in an action
brought on behalf of the "Britannia" to recover compensation
for her services. How much stronger, however, does the case
become when the party setting up the defence, as here is the
American Towing Company, which was not even a party to
the other suit, in which a decree was recovered against the
"Britannia," and when that decree does not purport to com-
pensate the American Towing Company for its loss, but was
merely intended to compensate a third party, to wit, the
Standard Dredging Company, for the loss which it sustained
in the transaction.

It is certainly doubtful whether the record evidence of
the proceedings in the libel case was properly admissible in
this case at all. It was introduced by the defendant on the
theory that inasmuch as the Court in that case had found that
the tug was guilty of negligence that this finding was at least
some evidence of negligence in the present case. The ad-
mission of this record evidence was opposed by the plaintiff,
and under the Court's decision, we, therefore, have the re-
markable result that the plantiff has won its case by reason

of the introduction of certain evidence which it did its best to exclude, and the defendant has lost its case by reason of the admission of certain evidence which it offered and put in against the objection of the other side.

The rule for which we contend is further supported by the English cases cited with approval in *Applegarth* v. *Robertson,* 65 Md. 493; *Mondel* v. *Steele,* 8 M. & W. 858; *Rigge* v. *Burbidge,* 15 M. & W. 598. In *Mondel* v. *Steele* an action was brought by the buyer to recover damages for breach of an express warranty in the quality of a ship built under a written contract. The defendant pleaded that the buyer had already recovered damages by setting up the breach of warranty in a suit brought by the defendant to recover the price of the ship, and this plea was held bad on demurrer. BARON PARKE said: "It must, however, be considered, that in all these cases of goods sold and delivered with a warranty, and work and labor, as well as the case of goods agreed to be supplied according to a contract, the rule which has been found so convenient is established; and that it is competent for the defendant, in all of those, not to set off, by a proceeding in the nature of a cross-action, the amount of damages which he has sustained by breach of the contract, but simply to defend himself by showing how much less the subject-matter of the action was worth, by reason of the breach of contract; and to the extent that he obtains, or is capable of obtaining, an abatement of price on that account, he must be considered as having received satisfaction for the breach of contract, and is precluded from recovering in another action to that extent, but no more."

This, *Mr. Benjamin* says, is the leading case now always cited for establishing, first, that the buyer may set up the defective quality of the warranted article in diminution of the price; and secondly, that he must bring a cross-action, if he desires to claim special or consequential damages, which action is not barred by reason of his having obtained a diminution of price in a previous action brought by his vendor. *Benjamin on Sales,* 893. Other authorities bearing on the

subject are: *Schreiner v. Miller,* 67 Ia. 91; *Waul v. Hardie,* 17 Tex. 553; *Davis v. Hedges,* L. R. 6 Q. B. 687.

If in the admiralty case, the Dredging Company had taken a position, or made a claim, which would be inconsistent with a refusal to pay the American Towing Company's bill against the Dredging Company, there might at least be some equity in the appellee's contention, but an examination of the record in the admiralty case will show that the Standard Dredging Company carefully avoided taking any such position. In the Master's report, which is made the basis of a decree in that case, a careful calculation was made as to the value of the barges lost, and this was done by first estimating their value at Mobile, and adding to this certain amounts expended for work done on the barges in connection with their proposed voyage to Baltimore. In this computation, there was included an item of $1,950 for towing barges from July 7th, to August 11th—that is to say, for towing them from Mobile to Charleston, but no claim was made for towing them from Charleston to a point off Currituck, where they were lost. If a claim had for the towing from Charleston to Currituck been made and allowed, it may be that the Standard Dredging Company would then have been estopped from disputing the bill of the American Towing Company against it, but as no such claim was made there is certainly nothing in the libel case that this appellant could use against the Dredging Company in a suit against it. We submit, therefore, that there was error in the granting of the Court's instruction to the jury, and that, on the contrary, the defendant's third, sixth and seventh prayers presented the true view of the law on this subject.

The theory of defendants' first and second prayers is that the contract between the Standard Dredging Company and the American Towing Company, by which the former was to tow certain barges from Charleston to Baltimore, and to be paid at the rate of $125 per day for the time occupied in the work, was an entire contract, and the same not being fully performed, and there being no legal excuse for the non-per-

formance, that the plaintiff is not entitled to recover any-
thing. It is a well established general rule that there is no
recovery under an entire contract until there has been a full
performance. *Denmead* v. *Coburn,* 15 Md. 29; *Coates* v.
*Sangster,* 5 Md. 121; *Watkins* v. *Hodge,* 6 H. & J. 38;
*Hamilton* v. *Warfield,* 2 G. & J. 482.

A similar proposition relating to the question of towage is
established by the English case of *The Madras,* 78 Law
Times, N. S. 325. In that case there was a contract for tow-
ing from Kingroad to Sharpness Dock. The voyage was
nearly completed and when but a short distance from its ter-
mination, the tow stranded on a rock, neither party being at
fault. The tug was compelled to abandon the tow. The claim
of the owners of the tug for towage was denied on the ground
that the contract for towage was indivisible, the Court apply-
ing the general principle that when an indivisible contract
cannot be completely fulfilled through no fault of either party,
there can be no recovery for a part performance. In this
case the Court said: "It is clear that the contract to tow into
Sharpness Dock was not fulfilled, and that owing to the cir-
cumstance that a fog came on, by the fault of no one the ves-
sel stranded on a rock.   *   *   *   I think it is the case sub-
stantially of *Appleby* v. *Myers,* and follows closely the anal-
ogy of the cases as to freight and those where the contract not
severable in its nature is entered into as a whole and cannot
be completed through no fault of anyone, and neither party
has any rights against the other." And then in conclusion
the Court says: "I am afraid the result must be that for the
towage from Kingroad to Sharpness the tugs cannot recover
anything." The claim for towage was, therefore, disallowed.

While this principle may sometimes seem to work a hard-
ship, it is, after all, essentially just, because it is only enforc-
ing the agreement of the parties; that is to say, if A. agrees
to tow barges from Charleston to Baltimore, and only tows
them from Charleston to Currituck, he has not carried out
what he agreed to do, and is, therefore, not entitled to com-
pensation. This principle has frequently been applied in

building cases.  *Brantly on Contracts,* page 221.  "If the house is destroyed by fire, or blown down, or otherwise damaged before it is finished, the performance of the contract is not excused by such accident, and not only can the builer recover nothing for the part performance, but he remains liable on his contract to erect the house."  *Superintendent of Public Schools* v. *Bennett,* 3 Dutcher, 513; *Lumber Co.* v. *Purdom,* 41 Ohio State, 373; *Lawing* v. *Rintles,* 97 N. C. 350; *Dermott* v. *Jones,* 2 Wallace, 1.

So, when one is to be paid for cutting timber and making it into lumber and delivering it to the defendant, he can recover nothing on *quantum meruit* when the lumber is destroyed by fire before the completion of the work.  *McDonald* v. *Bryant,* 73 Wis. 20.

The defendant's sixth bill of exceptions is based on the following ruling: The witness, Robert J. Bradford, who had testified that he was familiar with the customs and usages of the towing business, and who had also testified as to the oral contract entered into between Mr. Ray and himself, was asked this question: "Tell the jury, if you know, under a contract of the kind that you said you had, whether or not there is any custom or usage which determines the time of payment, when the money becomes due."  The contract to which Mr. Bradford had just testified was silent as to the time of payment, and the defendant desired to prove that under the universal custom the payment would not have become due until the completion of the voyage.  This testimony would have tended strongly to corroborate and strengthen the view that the contract is an entire one.

The defendant's third bill of exceptions is based on the following question, which the Court refused to allow: Captain Eaton, the President of the Standard Dredging Company, the owner of the scows, was asked: "Can you tell approximately the value of those scows?"  The object of this was to show that the scows were worth considerably more than the amount of the plaintiff's towing bill, and that, therefore, the loss sustained by reason of the negligence of those

in charge of the tug more than fully counter-balanced the whole amount of the plaintiff's bill.

*Robert H. Smith* and *J. Craig McLanahan,* for the appellee.

From the testimony it may be clearly seen that the appellee refused to make an entire contract for towing the scows from Charleston to Baltimore, but merely hired the tug "Britannia" to the appellant for the special purpose of going after the two scows at Charleston at the price of $125.00 per day. That this was the understanding of the contract by both parties is shown by the language of Mr. Bradford when he speaks of "hiring" the "Britannia." Furthermore, the testimony of Mr. Bradford, who conducted the negotiations and closed the contract, on the part of the appellant, shows, when he speaks of the presentation of the bill of the appellee, that he did not believe that the delivery of the barges in Baltimore was an absolute condition precedent to any compensation being paid to the appellee under its contract. Although he knew that the barges were lost, he did not dispute the bill rendered, but rather seems to have demurred to it as being too small. He only contested the bill after he was informed that the barges were lost through negligence on the part of the appellee.

The trial Judge took this view of the contract. In the opinion which he filed after the argument on a motion for a new trial filed by the appellant, he says: "It can readily be seen that the test sought to be applied by the defendant is as to the nature of the contract of towing. In other words, was no compensation to be paid to the plaintiff unless its tug brought the barges safely to Baltimore? If so, then the plaintiff could not recover in this case, because the barges were not brought to Baltimore. But I do not so read the contract. There was no whole price agreed upon for the complete work. Nor am I able to read from the contract any express or implied stipulation that the defendant would do more than use a reasonable effort to bring the barges here. If they had been

brought here, there could have been no question of a right to recover." And the appellee further submits, that, in view of the testimony, especially of Mr. Bradford, if the barges were lost without any fault of the appellee, the claim of the appellee would be absolutely enforceable at law, and that had not the question of the negligence of the appellee in not providing a sufficient hawser arisen, the claim would have been paid long since by the appellant, although the barges did not arrive in Baltimore.

It seems to be a principle settled long ago, and never since disputed, that in the ordinary contract of towage there is no guarantee by the tug, so to speak, that it will deliver the vessel to be towed at its destination. A tug boat is not an insurer, as is a common carrier. In *The Minnehaha*, 15 Moore P. C. 133, decided in 1861, the Privy Council laid down this general principle as beyond dispute: "When a steam boat engages to tow a vessel for a certain remuneration from one point to another, she does not warrant that she will be able to do so, and will do so under all circumstances and at all hazards, but she does engage that she will use her best endeavors for that purpose, and will bring to the task competent skill, and such a crew, tackle and equipment as are reasonably to be expected in a vessel of her class."

Upon the introduction of the evidence as to the suit in Admiralty, JUDGE ELLIOTT was of the opinion that thereafter any question of the negligence of the appellee causing the loss of the scows became immaterial, inasmuch as by the decree the appellee was put in the same position as though the tug had actually delivered the scows in Baltimore Harbor. The Judge said in his opinion, before referred to: "When the Standard Dredging Company undertook to recover for that loss it did not sue the defendant (appellant), but it did sue the plaintiff (appellee), and in that suit it recovered from the plaintiff a judgment which measured the full liability which the plaintiff incurred by its failure to bring the barges to Baltimore. In contemplation of law, therefore, the barges were placed in the possession of the Standard

Dredging Company, and the defendant became entitled to its towing charges. If it has not seen fit to collect them, there seems to be no reason why the plaintiff cannot recover from it."

The appellee contends that one of the fundamental principles of the law lies directly behind and gives support to this ruling of the lower Court. It is that the obtaining of a judgment or decree for the payment of money, plus in some cases the collection thereof, constitute an absolute restitution, so far as the injured party is concerned, and bar him from any further action on his claim. In other words, when a claim has been reduced to a judgment against a party guilty of a tort or a breach of contract, thus merging and in many cases extinguishing the original claim, the defendant, always upon payment of the judgment, and in many cases without such payment, has all his liability on the original claim wiped out, and he is in the same position as though no wrong had been done or breach of contract made by him. 23 *Cyc.* 1110 and 1111.

Any claim of the Standard Dredging Company against the appellee has been merged and extinguished by the decree in admiralty alone. The mere fact of the payment or non-payment of the amount of the decree by the appellee to the Standard Dredging Company would not of itself affect the right of the appellant to recover from the Standard Dredging Company the amount of its towing bill. As a matter of fact that decree was long ago satisfied, although in the record of the case at bar no evidence appears of that fact. At the trial below, after the Court had refused both the appellant's and the appellee's prayers and granted its own instruction, the appellee, adopting the view of the case taken by the Court, moved to reopen the case in order to introduce evidence of the satisfaction of the decree in admiralty to prevent any possible question arising on this point. The Court, however, ruled that the proof of "satisfaction" was immaterial and overruled the appellee's motion.

Every claim therefore of the Standard Dredging Company,

arising from the loss of the barges, having been included in the amount of the decree rendered by the United States District Court, and thus merged in the decree and extinguished, the appellee stands today, in the same position as though it had fulfilled the full duty resting upon it.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a judgment recovered by the appellee against the appellant, in the Court of Common Pleas of Baltimore, for the towing of certain scows.

The suit was brought in assumpsit on the common counts and also a special count for money due for services rendered by the plaintiff's tug Britannia in towing mud scows at the request of the defendant. An account was filed with the *narr.* charging the defendant with ten days' services of the tug at $125 per day. The defendant pleaded two general issue pleas, a third plea of payment and a fourth and fifth plea each setting up a special defense.

The fourth plea averred in substance that the towing for which the suit was brought was negligently and carelessly done in that the Britannia was not properly equipped for the towing and had used a defective hawser therefor whereby the scows were wrecked and lost causing a damage to the defendant greatly exceeding the plaintiff's claim.

The fifth plea averred that, in an admiralty suit in the District Court of the United States for the Eastern District of Virginia, the Standard Dredging Company which was the owner of the scows had libelled the plaintiff for the loss of the scows and had procured a decree for a large amount against it, and that in fixing the amount of the decree the Admiralty Court had allowed as a credit to the present plaintiff, who was the defendant in that case, the amount of the towage for which this suit was brought and that thereby the plaintiff's claim had been satisfied.

The case was tried before a jury upon the issues thus presented and resulted in the judgment for the plaintiff from which the appeal was taken.

There is evidence in the record tending to prove the fol-
lowing facts: The Standard Dredging Company, desiring to
have four of its mud scows then lying in the harbor of Mo-
bile, Alabama, taken to Baltimore, made a contract with the
American Towing and Lightering Company to tow them
from the former to the latter city for a compensation of
one hundred and fifty dollars per day of the time that might
be consumed in the trip. The Towing Company started the
four scows from Mobile in tow of its tug Buccaneer, which
took them in safety as far as Charleston, where they arrived
in August, 1905. Apprehending that the Buccaneer might
not be able to tow all four of the scows along the dangerous
coast of the Carolinas and around Cape Hatteras, the Tow-
ing Company sent her forward with two of the scows, and
entered into an engagement with the appellee to have its tug
Britannia tow the other two scows to Baltimore at a compen-
sation of $125 per day. The Buccaneer towed her two scows
in safety to Baltimore.

The Britannia started from Charleston towing the other
two scows by a nine-inch hawser of her own on August 22nd.
The hawser broke twice on the first day out, although the
wind was light and the sea smooth. When the second break
occurred Captain Muir, who was on the Britannia as the rep-
resentative of the Dredging Company, the owner of the
scows, tendered to the tug's officers the use of two new six-
inch hawsers, which were upon one of the scows, for the pur-
poses of the tow, but his offer was declined and the trip was
resumed with the old hawser, which had been mended. A
few days later when near Cape Hatteras the hawser parted
again in a storm and the tug, being unable to pick up the
broken hawser or recover the scows, they were driven ashore
by the storm and completely lost, and the tug proceeded to
Baltimore by itself. There was also evidence tending to
show that the appearance of the broken ends of the hawser
where it parted indicated that it was a defective one.

After the loss of the two scows their owner, the Dredging
Company, libelled the tug Britannia in the United States

District Court for the Eastern District of Virginia for their loss, alleging that it had been caused by the negligence of the tug. Copies of the commissioner's report and the Court's decree in the libel suit were put in evidence in the present case. From these documents it appears that the tug was charged with one-half of the libellant's loss, and that in estimating that loss the Court took into consideration the cost of the towage of the four scows from Mobile to Charleston by the Buccaneer, but not the cost of the towage of the two scows by the plaintiff's tug Britannia from Charleston for the recovery of which this suit was brought.

The contract between the plaintiff and defendant for the towage of the two scows from Charleston to Baltimore was an oral one made over the telephone, and not reduced to writing, and there is some conflict of testimony as to its precise terms. The evidence of the plaintiff's witnesses tends to show that it was merely a chartering of the tug to the defendant at one hundred and twenty-five dollars per day, to be used by it for the purpose of the towage, while the evidence of the defendant's witnesses tends to prove that the contract was an entire one by which the plaintiff undertook to tow the two scows from Charleston to Baltimore for a compensation of one hundred and twenty-five dollars per day of the voyage.

At the close of the case in the Court below the plaintiff offered four prayers and the defendant offered eight. The Court rejected all of the prayers of both sides and gave to the jury an instruction of his own, which will receive further notice hereafter.

The plaintiff's first prayer was predicated upon the theory that the plaintiff had merely chartered the tug Britannia to the defendant for so long time as the latter might require its services at a price of $125 per day, and it instructed the jury that if they found such to have been the contract between the parties and that the defendant had used the tug for ten days, and not paid for it, their verdict should be for the plaintiff, unless the jury found that the defendant had

lost by the negligence or fault of the plaintiff a greater sum than they found to be due to the plaintiff under the charter of the tug.

The plaintiff's second prayer, which was upon the measure of damages, was entirely consistent with the theory of the first prayer.

The plaintiff's third prayer was founded upon the finding by the jury that the terms of the contract between the parties were that the plaintiff hired the tug to the defendant at $125 per day to bring the scows from Charleston to Baltimore, and that the Britannia went to Charleston for them and started with them in tow for Baltimore, and that they were lost without any negligence on the part of the tug, her master or crew, and that the defendant had not paid for the service of the tug, and it instructed the jury that if they found those facts the plaintiff was entitled to recover.

The plaintiff's fourth prayer asserted that if the jury found for the plaintiff under its third prayer they should allow the plaintiff what they thought the services of the tug were reasonably worth up to the time of the loss of the scows. The second and fourth prayers allowed the interest in the discretion of the jury.

The rejection by the Court of these prayers does not come directly before us for review, as the plaintiff did not appeal, but we see no reason for their rejection, as they fairly stated the law of the case from the plaintiff's standpoint if the jury found the facts to have been as stated in the prayers.

The defendant's first prayer was properly rejected because it asserted that the uncontradicted evidence showed that by the oral agreement between the parties to the case the plaintiff had contracted to tow the two scows from Charleston to Baltimore. The testimony to that effect was not uncontradicted. The plaintiff's secretary, Edward H. Ray, who made the contract for it, testified that he refused to agree on its behalf to tow the scows from Charleston to Baltimore. Even the defendant's secretary, Robert J. Bradford, who made the contract on its behalf, testified that "he had a con-

versation over the telephone and hired from Mr. Ray the
tug Britannia to proceed to Charleston, South Carolina, for
the purpose of towing scows to Baltimore for the compensa-
tion of $125 a day."

The construction of an oral contract, whose terms are un-
disputed, like that of a written contract, is a matter for the
Court to whom the law confides the interpretation of all con-
tracts, but where the fact as to what were the terms or pro-
visions of an oral contract is in dispute, and the testimony
on the subject is conflicting, it should be left to the jury, not
to construe the contract, but to find what it in fact was. That
can ordinarily be done by instructions to the jury with hypo-
thetical directions as to the law based upon the finding by
them of the existence of specified terms in the contract.  9
*Cyc.* 786; *Bonaparte* v. *Roberts,* 73 Md. 201; *Eureka Fer-
tilizing Co.* v. *Balto. Copper Co,.* 78 Md. 188; *Joseph Bros.*
v. *Schoenthal Co.,* 99 Md. 392.

The defendant's second prayer was properly rejected, be-
cause it asked the Court to take the case from the jury for
want of any evidence legally sufficient to entitle the plaintiff
to recover.  Without expressing any opinion as to the weight
of the evidence, we cannot agree that the plaintiff offered no
legally sufficient evidence to go to the jury in support of its
case.

The other prayers of the defendant assert in various forms
the proposition that if the jury found that the negligence of
the plaintiff or its servants in charge of its tug caused or con-
tributed to cause the loss of the scows then it could not
recover.  Such negligence would not under all circumstances
have prevented a recovery by the plaintiff.  If the jury had
found from the evidence that the plaintiff contracted with
the defendant to tow the two scows from Charleston to Balti-
more and failed to do so through its own negligence, or that
of its agents, then their verdict should have been for the
defendant.  If, on the other hand, they had found from the
evidence that the plaintiff merely hired or chartered the tug
to the defendant for the purpose of towing scows, and that

the negligence of the plaintiff or its agents in charge of the
tug while doing the towing caused or contributed to cause the
loss of the scows, then the plaintiff was entitled to recover
the price agreed on for the use of the tug for the time that
the defendant retained it, less whatever sum the jury might
find that the defendant lost by reason of such negligence or
fault of the plaintiff or its servants.

The former of the above propositions treats the contract
as an entire one to render a particular service, and holds
the plaintiff to the settled doctrine that it cannot in such
cases recover the contract price under either a general or a
special *assumpsit* unless it shows that it has performed its
part of the contract. *Coates* v. *Sangston,* 5 Md. 121; *Den-
mead* v. *Colburn,* 15 Md. 29; *Gill* v. *Vogeler,* 52 Md. 666;
*North Bros. & Strauss* v. *Mallory,* 94 Md. 316; *In re The
Madras,* 78 Law Times, N. S. 325; *Southn. Bldg. Assn.* v.
*Price,* 88 Md. 155. The latter proposition treats the contract
as an open one of hiring the services of the tug for an indefi-
nite time at a daily rate of compensation, and holds the de-
fendant liable at that rate for the number of days that it re-
tained the tug, recognizing at the same time its right to re-
coup against the plaintiff's claim any loss sustained from the
careless or negligent performance of the contract by the lat-
ter. *Warfield* v. *Booth,* 33 Md. 63; *Lee* v. *Rutledge,* 51 Md.
318; *Fidelity Co.* v. *Haines,* 78 Md. 458.

The defendant's third, fourth, seventh and eighth prayers
were defective in not fully stating either one of the theories
of the case and yet concluding to the plaintiff's right of recov-
ery. Its fifth and sixth prayers submitted to the jury to find
as a fact that the compensation to the plaintiff under the con-
tract did not become due until the arrival of the scows at
Baltimore. We find no evidence in the record tending to
prove such a fact, and as the plaintiff filed a special excep-
tion to those two prayers for want of evidence to support
them, they were also properly rejected.

The instruction granted by the Court of its own motion
was as follows:

"The Court instructs the jury that if they find from the evidence that the defendant entered into a contract with the plaintiff whereby the latter chartered to it the tug Britannia to tow certain scows from Charleston to Baltimore, and if they further find that the said defendant agreed to pay the plaintiff for such towing at the rate of one hundred and twenty-five dollars per day, for such time as it would require said tug to proceed from Baltimore to Charleston and return from the latter place with the said scows in tow; and if they shall further find that the plaintiff's tug undertook said service, and proceeded with the same until said scows parted from said tug; and if they shall further find that after said parting it was impossible for said tug to recover said scows, and that in consequence thereof said tug proceeded on its return to Baltimore without said scows; and if they shall further find that subsequent to the loss of said scows the owner thereof being other than the defendant instituted suit against the plaintiff and recovered against it on account of the loss of said scows, then the plaintiff is entitled to recover in this case at the rate of one hundred and twenty-five dollars per day for each day which elapsed between the time when they shall find that said tug Britannia left Baltimore, and the time at which it parted from said scows, notwithstanding the fact that they may also find that the loss of said scows was due to the negligence of the plaintiff, and they may allow interest in their discretion dating from November 15th, 1907."

We are unable to agree with the learned Judge below in the view that this instruction correctly stated the law of the case to the jury. In the first place, it assumes that the oral contract between the parties to the case was in fact a *chartering* of the tug Britannia by the plaintiff to the defendant for the purpose of towing the scows from Charleston to Baltimore, and entirely ignores the contention of the defendant, that it was in fact a contract on the part of the plaintiff to tow the scows for the defendant from the former to the latter city. There is some evidence in the record tending to support the defendant's contention, and it was entitled to have

the question, as to what the contract really was, submtited to the jury.   Any single instruction intended to cover the whole case should have submitted that question.

We think the last branch of the instruction was also erroneous.   It held that if the jury found that the owner of the scows, not being the defendant, had sued the palintiff and recovered against it on account of the loss of the scows, then the plaintiff was entitled to recover the stipulated daily compensation for the tug from the time it left Baltimore until it parted from the scows, even if the jury found that the loss of the scows was due to the negligence of the plaintiff.

The theory of this part of the instruction evidently is that if the owner of the scows had been made good for their loss by the plaintiff, then such owner was thereby placed in same position as if the scows had been delivered to it in Baltimore, and had sustained no loss by the plaintiff's failure to actually bring them to that city, and therefore the plaintiff was entitled to be paid for the towage.   The instruction, however, does not require the jury to find that the owner of the scows had been fully satisfied for the loss of the barges.   It only requires them to find that in a suit to which the defendant was not a party and where he had no opportunity to be heard there had been a recovery by the owner against the plaintiff "*on account* of the loss of the scows," without requiring them to find that the recovery was for their value delivered in Baltimore, the point at which they were to have been delivered under the contract which forms the basis of the present suit.   By reference to the commissioner's report and the decree in admiralty on account of the loss of the scows it appears that their value, for the purpose of ascertaining the amount lost by their destruction, was arrived at by taking their value at Mobile when they left that port

It was therefore their value to the owner in Charleston and not in Baltimore that formed the basis of the recovery on account of their loss in that suit.

Furthermore the contract involved in the present case is and adding the cost of their towage to Charleston.

not one between the plaintiff and the owner of the scows. It is one between the plaintiff and the defendant and it is their rights *inter sese* which are to be determined. If the scows were lost through the negligence of the plaintiff's servants in charge of the tug, certainly the defendant when sued for the services of the tug had a right to recoup against the plaintiff's claim any loss which it, the defendant, had suffered by reason of that negligence, apart from any rights which the owner of the scows may have had. In fact all of the prayers offered by the plaintiff either expressly or impliedly admitted the defendant's right of recoupment of its own losses caused by the destruction of the scows if the jury found that they had been wrecked and lost through plaintiff's negligence.

The rejection of all of the prayers offered in the case and the substitution in lieu of them of the single instruction of the learned Judge constituted in our judgment reversible error.

There are six exceptions to evidence in the record. The first and second were to attempts to prove that the secretary of the plaintiff company had admitted that the hawser used by the tug Britannia to tow the scows was an improper one and that their loss was due to its use. There was no error in excluding that evidence. It was only an expression of opinion by the secretary that was sought to be proven. There was no evidence that he was an expert in hawsers and no presumption that he was such arose from his position as secretary of the company.

The third exception was to the Court's refusal to permit the president of the Towing Company which owned the scows to be asked what was their value. That ruling was in our opinion erroneous. Although the defendant did not own the scows, it was under contract to tow them from Mobile to Baltimore when they were lost and if the loss was occasioned by the negligence of the plaintiff as a subcontractor when its tug was towing two of them from Charleston to Baltimore the defendant may have thereby become liable to their owner for

their value and should have been permitted to ask the question.

The fourth and fifth exceptions were to questions put to Captain E. F. Green to elicit his opinion as to the sufficiency of the hawser used by the Britannia in the attempt to tow the scows when they were lost. It had already been proven that the witness had been a seafaring man for forty years and for thirty years a captain, and had had experience in towing all over the world and that he had been coast pilot and navigator of the tug Buccanneer which succeesfully towed two of the four barges from Mobile to Baltimore. That evidence qualified him to speak as an expert in towing and he should have been permitted to answer the question.

There was no error in the ruling which forms the basis of the sixth exception. It was taken to a question, asked of the mate of the tug Buccaneer, whether there was any custom or usage which determines the time of payment of the compensation under a contract of the kind proven in this case. The time of payment for services rendered under the contract was immaterial to the issue in the case. The rate of compensation was fixed by the contract and there was no point made in the case of a refusal to pay it at the proper time.

The judgment appealed from will be reversed and the case remanded for a new trial.

*Judgment reversed with costs and new trial awarded.*