THOMAS *v.* HUDSON MOTOR CAR COMPANY ET AL.

[No. 32, September Term, 1961.]

*Decided October 12, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, HORNEY and SYBERT, JJ.

*William Graham Boyce, Jr.*, with whom were *Musgrave, Preston & Boyce* on the brief, for appellant.

*Mathias J. DeVito* and *Joseph H. Young*, with whom were *Piper & Marbury, Richard W. Larwin* and *Beaumont, Smith & Harris* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment entered for the defendant, Hudson, after the trial court had directed a verdict for the defendant. The case had been instituted to recover $66,000 allegedly due under a contract dated September 25, 1950, whereby the appellant was to receive a commission of $5.50 per ton upon 12,000 tons of steel, to be manufactured and delivered to Hudson by Industrial Forge and Steel Co. of Canton, Ohio. A writ of attachment was served on Hudson Sales Corporation, a Michigan corporation, by service on the State Tax Commission. On a prior appeal, we held the writ good. *Thomas v. Hudson Sales Corp.*, 204 Md. 450. The present case went to trial before the court and a jury upon the short note case.

At the trial, the plaintiff relied upon an alleged oral contract made prior to September 25, 1950. It was shown that Robert Barit, Hudson's purchasing agent, had a telephone conversation with Thomas early in September, 1950, in which Barit sought Thomas' aid in the procurement of steel, which was then in short supply. Thomas agreed to look into the matter, and testified that the price he would place "on procurement" would be $5.50 per ton. Thomas attempted to obtain a commitment on steel from Central Iron and Steel, but was told that its entire output was sold out. Thomas learned that there was a possibility that Industrial Forge and Steel Co., a company not then in production, might be interested in filling an order for 12,000 tons of ingot steel. This information was given to Barit over the telephone and, according to

Thomas, Barit agreed to execute a purchase order to Industrial and to pay Thomas $5.50 per ton. Barit and Thomas met for the first time in Detroit on September 18, 1950. Barit drafted and signed a letter to Thomas stating that if Industrial accepted a purchase order attached to the letter, and made deliveries pursuant thereto according to specifications, Hudson would pay Thomas $5.50 per ton of slabs. The last clause of the letter provided: "In the event Industrial Forge and Steel Company does not accept our purchase order or does not deliver according to schedule, this agreement is to be null and void without expense to us or obligation on our part." Thomas signed a copy of the letter to indicate his acceptance. He also admitted at the trial that the letter "substantiated" the oral contract.

A few days later, Thomas informed Barit that Industrial could not deliver slabs, but could deliver ingots, to be slabbed by another company, and the agreement should be modified accordingly. On September 25, 1950, Thomas, Barit and Harry C. Reynolds, an Assistant Secretary and Treasurer of Industrial, met in Detroit. Reynolds testified he had no authority to accept orders for the Company, but only to pass on credit, which was his specialty. He told Barit Industrial's plant was not in operation, but he would try to obtain the necessary funds to reopen the mills. Barit handed him the purchase order. Reynolds did not sign it, but transmitted it to Industrial at Canton, where it was marked received, but not executed by anyone. A new letter, dated September 25, 1950, was prepared by Barit and handed to Thomas, stating precisely the same terms as the letter of September 18, 1950, which had been modified by interlineation to take care of the change from slabs to ingots.

A few days later, Thomas was informed by Reynolds that Industrial needed $250,000 to reopen its plant, and demanded that Hudson advance this sum. Although Thomas protested, he did call Barit and put the proposition to him. Barit declined, but, according to Thomas, made a counter offer to furnish scrap, which Thomas relayed to Reynolds. Reynolds replied that Industrial needed cash, not scrap. Thomas took no further steps in the matter. On September 29, 1950, the

purchase order was returned to Hudson, unexecuted. A few days later Barit wrote Thomas to return all copies of the letter of September 25, but Thomas testified he never received this letter. In November, Hudson sent Industrial a notice to cancel the purchase order. Industrial replied that no order had ever been accepted, so that their records agreed.

The record extracts indicate that Industrial probably did reopen its plant in October, 1950, and produced an average of some 3,500 tons per month thereafter, but the record is clear that Industrial delivered no steel to Hudson. On the other hand, it appears that Central Iron & Steel delivered some steel to Hudson, both before and after September, 1950. Central was a subsidiary of Barium Steel Company.

The appellant contends that the trial court erred in refusing to submit to the jury the question whether there was an oral contract between the parties, and whether it was subsequently terminated or varied. Upon Thomas' own testimony and admissions it would seem to be undisputed that the terms stated in the letters of September 18 and 25 were the same as those mentioned in the earlier negotiations. But if we assume, without deciding, that there was some inconsistency between the two, the terms of the written agreement would prevail. It is well settled that where parties execute a written agreement, oral utterances that precede it are immaterial. *Hubble v. Somerville,* 187 Md. 418, 428, and cases cited. It is also well settled that an earlier agreement may be modified by a later one, by mutual consent. *Nat. School Studios v. Mealey,* 211 Md. 116, 129, and cases cited. We think the trial court was correct in ruling that the whole agreement between the parties was contained in the letter of September 25, 1950.

It seems equally clear that the plaintiff failed to establish a right to recover under that agreement. Recovery of commissions by Thomas was expressly predicated upon acceptance of a purchase order by Industrial, and the delivery of the steel according to schedule. There was no legally sufficient evidence to support a finding that either condition was met. Cf. *Wood v. Standard Phosphate Co.,* 140 Md. 654. The appellant seems to contend that there was a deliberate scheme to defraud him of his commissions, by having Central

Iron and Steel deliver to Hudson the steel which Industrial had declined to supply. If such a claim could be made under the pleadings, it is sufficient to observe that there is no evidence to support it or to show that Hudson, after its unsuccessful effort to obtain steel from Industrial, placed any order with Central. The only testimony relating to deliveries of steel by Central was that Central delivered certain steel to Hudson pursuant to an order placed in July, 1950, before Thomas came into the picture. Under these circumstances we think the trial court properly directed a verdict in favor of the appellee.

We find no merit in the appellant's numerous objections to rulings on the evidence. The court quite properly ruled that the appellant could not select parts of the pretrial deposition of Barit to read to the jury, but must read it all, as insisted by the appellee. See Maryland Rule 413 a 4 and *Kuenne v. Kuenne,* 219 Md. 101, 108. The same thing is true as to letters offered as a part of that deposition. The doctrine of verbal completeness also seems applicable. See 6 Wigmore, *Evidence* (3d ed.), § 1786. The appellant complains that he was not permitted to call Reynolds as a hostile witness, and to examine him as to Industrial's fixed assets, and its connection with Barium Steel. Reynolds was not a party to the suit, nor was he an officer, director or agent of a party, so that Code (1957), Art. 35, sec. 9, is not applicable. *Proctor Electric Co. v. Zink,* 217 Md. 22. There is nothing to show that Reynolds was hostile, and there was no claim of surprise. In connection with the question of fixed assets, Reynolds stated that without the records he would be guessing. Appellant's counsel then sought to refresh the recollection of the witness by handing him a Dun & Bradstreet report. A report made by a third party obviously could not be used for such a purpose, at least in the absence of a showing that the witness knew of the report at the time it was made, and knew it to be correct. *Mercantile T. & D. Co. v. Rode,* 137 Md. 362, 373. A question put to the witness as to whether Industrial was a subsidiary of Barium Steel Corporation was properly sustained, because there was no showing that Reynolds had knowledge of intercorporate relations between Industrial and

any other corporations, or that he knew who owned or controlled its stock. If he had hearsay knowledge only, it could not be used as proof over Hudson's objection. But if we assume, without deciding, that there was error, it was harmless, because even if Industrial were a subsidiary of Barium, there was no evidence to support an inference that Barium used its control to prevent the acceptance by Industrial of a contract for steel, or to divert production to Central, or to otherwise prevent the performance of the contract between Hudson and Thomas for commissions.

Other objections were made to the refusal of the trial court to allow Thomas to refresh his recollection by a memorandum prepared by a third party (which requires no comment), and to permit Thomas to testify as to a statement made to him by one Calhoun, a salesman for Hudson in 1950. The statement proffered was to the effect that Calhoun expressed the opinion that Thomas had earned his commissions and there was no reason why he should not be paid. We think the trial court properly excluded the statement, for there was no showing of any express or implied authority on the part of Calhoun to bind the corporation. See *Feigley v. Balto. Transit Co.*, 211 Md. 1; *Deane v. Distilling Co.*, 138 Md. 388; *N. Y. & Balto. Trans. Co. v. Baer*, 118 Md. 73; *Am. Tow'g Co. v. Baker-Whiteley Co.*, 111 Md. 504. It also seems clear that Calhoun was merely expressing his personal sympathy with Thomas, and not making an admission in his capacity as an employee of Hudson. As a salesman for Hudson, Calhoun had no connection with the purchasing department. The trial court properly excluded other testimony of the appellant, which was either irrelevant or not based upon personal knowledge.

Finally, the appellant urges that the trial court erred in denying a motion for a mistrial, because of alleged bias and statements of the trial court, prejudicial to the appellant's case before the jury. We find no evidence of bias in the record. The objection seems to be simply that in his rulings on evidence at one point the trial court used "a tone of voice that was most unjust to the plaintiff". Even if we assume, without deciding, that the trial court's tone was impatient or even

discourteous, it could not possibly have prejudiced the jury in a case not submissible to it, and withdrawn from the jury's consideration. *Maryland Casualty Co. v. Toups,* 172 F. 2d 542 (C. C. A. 5th). Cf. *Bryant v. State,* 207 Md. 565, 584.

*Judgment affirmed, with costs.*