**EDELL & ASSOCIATES, P.C.**

v.

**LAW OFFICES OF PETER ANGELOS.**

**Civil No. L–99–3546.**

United States District Court, D. Maryland.

July 25, 2000.

Michel F. Baumeister and Dorothea M. Capone, Baumeister & Samuels, New York City, for Plaintiffs.

H. Thomas Howell, William F. Gately, Howell & Gately, Towsons, MD, and William J. Brennan, III, Smith, Stratton, Wise, Heher & Brennan, Princeton, NJ, for Defendant.

## MEMORANDUM

LEGG, District Judge.

Before this Court is Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Leave to File a Second Amended Complaint. The parties have extensively briefed the motions, and the Court dispenses with a hearing. *See* Local Rule 105.6 (D.Md.1999). For the reasons stated below, the Court will, by separate Order, GRANT Defendant's Motion for Summary Judgment and DENY Plaintiffs' Motion for Leave to File a Second Amended Complaint.

## I. Background

### A. Maryland Tobacco Litigation

This case arises from several states' recent litigation against the tobacco industry. In 1995, the Attorney General of Maryland solicited proposals from lawyers and law firms to represent the State of Maryland against the tobacco industry. In Decem-

ber 1995, Defendant Law Offices of Peter Angelos ("the Angelos firm") through its president, Peter Angelos ("Angelos") approached Plaintiff Marc Z. Edell ("Edell") about the possibility of his law firm, Plaintiff Edell & Associates, P.C. ("Edell's firm"), participating on Angelos's litigation team.

Plaintiff Marc Edell is a New Jersey attorney with experience in tobacco litigation. According to the proposal that Angelos submitted to the Maryland Attorney General, Edell is "one of the preeminent authorities on tobacco litigation in the country," having been the "first to bring a successful suit to verdict against tobacco companies on behalf of a smoker." [1] (Edell Aff., Ex. C at 15.) Because of Edell's expertise in tobacco litigation, Angelos postured that the addition of Edell's firm to the team would enhance the likelihood of success in litigation if the Maryland Attorney General selected Angelos's proposal. (*See id.*)

Initially, Edell agreed to work with Angelos as a consultant. Although Edell and Angelos had not yet discussed Edell's compensation, Angelos submitted the proposal to the Maryland Attorney General on December 29, 1995, which included a description of Edell's participation. The proposal stated that Edell would serve as co-lead counsel at trial. (*See* Edell Aff., Ex. C at 15.)

After submitting the proposal, Angelos, through H. Russell Smouse ("Smouse"), a senior partner at the Angelos firm, began negotiating with Edell regarding Edell's compensation. On January 17, 1996, Edell sent a letter to Smouse proposing that Edell receive a flat fee each year, and twenty percent of any contingency fee. (*See* Edell Aff., Ex. D.) Smouse rejected this proposal. On January 25, 1996, Edell sent another letter to Smouse proposing a larger flat fee, ten percent of the contin-

gency fee for the first $100 million obtained, and five percent for any fee recovered thereafter. (*See* Edell Aff., Ex. E.) This proposed compensation scheme was also rejected.

On March 4, 1996, Edell and Angelos entered into a signed compensation agreement. The agreement provided that in exchange for Edell's working fifteen hours each month on the case, Edell would receive monthly payments of $10,000, with payments totaling a guaranteed minimum of $500,000. In addition, the Angelos firm would pay all of the expenses incurred during the litigation. Marc Edell and Peter Angelos both signed the agreement. (*See* Edell Aff., Ex. F.)

On March 19, 1996, the Maryland Attorney General named the Angelos firm as special counsel for Maryland in the tobacco litigation. On March 27, Peter Angelos and Maryland's Board of Public Works executed a contract by which the Angelos Firm agreed to represent Maryland in the litigation. The contract provided that Angelos would receive a twenty-five percent contingency fee for any recovered funds. The contract also prohibited the Angelos firm from assigning, transferring, or otherwise disposing of the contract or any rights created under the contract without the consent of the Attorney General. (*See* Def. Ex. A.)

The Angelos firm and the Maryland Attorney General jointly filed a complaint against the tobacco industry in the Circuit Court for Baltimore City on May 1, 1996.

After Angelos and Edell signed the compensation agreement, and after the complaint was filed in Baltimore City Circuit Court, Edell continued to seek additional compensation from Angelos. Edell asserts that this additional compensation represented the additional time that Edell was spending on the litigation.

---

**1.** In its Memorandum in Support of Summary Judgment, the defendant disputes Edell's qualifications as a tobacco litigator. The Court notes, however, that the language chal-

lenged is language that the defendant wrote itself in the proposal to the Maryland Attorney General.

On June 4, 1996, Edell submitted to Smouse a proposal for a new compensation scheme. The proposal anticipated that Edell would dedicate eighty percent of his time on the project in exchange for $25,000 per month for a minimum of fifty months, plus eight percent of the first $250 million in fees received and five percent of any fees received thereafter. (*See* Edell Aff., Ex. K.) Although the Angelos firm did not accept this proposal, Edell began dedicating more time to the project.

On February 14, 1997, Edell sent another letter to Smouse, proposing that in exchange for Edell's extra time, Angelos pay him an hourly rate of $325. (*See* Edell Aff. Ex. L.) In accordance with this proposal, Angelos paid an hourly rate of $325 for every hour beyond the fifteen hours per month as stated in the original agreement. On June 9, 1997, Edell wrote a memorandum to his file acknowledging that the parties had not yet entered into a formal agreement memorializing the modified compensation scheme. (*See* Edell Aff. Ex. M.)

On July 29, 1997, Edell wrote another letter to Smouse stating that he had not yet received a draft agreement. The letter also stated that the amount owed did not "reflect the contingency fee component which we have also discussed." (Edell Aff. Ex. N.) Smouse responded to Edell's letter on August 4, stating that he would draft an agreement. (Edell Aff. Ex. O.) Each month thereafter, Edell submitted a summary of his hours worked and the money owed, each time mentioning that the issue of a contingency fee had still not been resolved. (*See* Edell Aff. Ex. P–R, T.)

On July 10, 1998, Smouse responded by letter to Edell's assertions of entitlement to a contingency fee. In the letter, Smouse affirmatively denied the existence of a contingency fee agreement, and requested that Edell stop mentioning the contingency fee in the monthly billing statements. (*See* Edell Aff. Ex. U.)

According to Edell, Angelos continued to pressure Edell to contribute more hours to the tobacco litigation. On July 26, 1998, pursuant a request from Angelos, Edell submitted another proposal for a new compensation scheme. In addition to receiving flat fees, Edell requested ten percent of any contingency fee. (*See* Edell Aff. Ex. V.)

Smouse expressly rejected this proposal on August 13, 1998. In his rejection letter, Smouse reiterated that the Angelos firm at no time contemplated sharing any contingency fee with Edell. He also requested that Edell withdraw the July 26 proposal. (*See* Edell Aff. Ex. AA.) Edell complied with this request on August 16. (*See* Edell Aff. Ex. BB.) After August 16, negotiations between Edell and Angelos broke down entirely.

On November 18, 1998, the State of Maryland settled its case against the tobacco industry for approximately $6.6 billion. Pursuant to its contract with the State of Maryland, the Angelos firm stands to recover $1.6 billion in attorneys' fees. The Angelos firm denies that Edell's firm is entitled to any portion of that fee.

Until March 3, 1999, the Angelos firm complied with the original March 4, 1996 agreement signed by both Angelos and Edell. Each month, the Angelos firm sent Edell a payment of $10,000 pursuant to the agreement. In addition, pursuant to the February 14, 1997 letter, the Angelos firm paid Edell an hourly rate of $325 for each hour in excess of the fifteen hours agreed upon on March 4, 1996. On March 3, 1999, the Angelos firm sent Edell a check for $150,000. This amount represented the unpaid balance of the $500,000 guaranteed minimum prescribed in the March 4, 1996 agreement. In total, Edell and his firm received $798,218 in payments for their participation in the tobacco litigation.

**B. Class Actions in Other States**

While Angelos and Edell were working together on the Maryland tobacco litigation, they were also submitting bids for the tobacco class action lawsuits being filed in

other states. In April 1996, the State of New Jersey requested proposals from lawyers and law firms to represent New Jersey in litigation against the tobacco industry. Angelos approached Edell about working together as a team for this proposal. Edell had been approached by other law firms as well, and communicated these offers to Smouse. According to Edell, Smouse assured Edell that the "partnership" between the Angelos firm and Edell's firm would be "rewarding." (*See* Edell Aff. ¶ 41.) Based on Smouse's assurances, Edell rejected the other firms' offers.

On April 24, 1996, the Angelos firm and Edell's firm submitted a joint proposal to the State of New Jersey. Shortly thereafter, Assistant New Jersey Attorney General Alex Waugh requested from Edell additional information concerning the advancement of litigation expenses. Smouse informed Edell that the Angelos firm would advance only 50% of the litigation expenses, rather than the 100% advanced in the Maryland litigation. Upon learning this information, Assistant Attorney General Waugh asked Edell whether the Angelos firm would agree to advance all the litigation expenses. The Angelos firm refused to do so, and the contract was awarded to another law firm.

### C. Procedural History

On February 9, 1999, Edell and his law firm filed this lawsuit in the United States District Court for the District of New Jersey, which then transferred the case to this Court on November 12, 1999. Prior to transferring the case, the District of New Jersey dismissed Counts II and IV of the Complaint without prejudice. The following counts of the First Amended Complaint remain:

> *Count I:* Action for Declaratory Judgment that a valid contract between Edell and the Angelos Firm existed for Edell's participation in the Maryland tobacco litigation, entitling Edell's firm to a percentage of the contingency fees awarded from the settlement;
>
> *Count III:* Breach of Contract as to the Maryland tobacco litigation;
>
> *Count V:* Breach of the covenant of good faith and fair dealing;
>
> *Count VI:* Intentional misrepresentation; and
>
> *Count VII:* Fraud in the inducement.

The Angelos firm filed a Motion for Summary Judgment on all remaining counts. After the motion was filed, the plaintiffs filed a Motion to File a Second Amended Complaint. The proposed complaint adds a count for negligent misrepresentation. For the reasons stated below, the Court will grant the Defendant's Motion for Summary Judgment and deny the Plaintiff's Motion to File a Second Amended Complaint.

### II. Summary Judgment Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).

In determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987). The Court must take care not to foreclose trial when the case presents genuinely disputed, material facts.

Nevertheless, as the Fourth Circuit made clear in *Thompson Everett, Inc. v. National Cable Advertising, L.P,* 57 F.3d

1317, 1322 (4th Cir.1995), (i) "the mere existence of some disputed facts does not require that a case go to trial," (ii) "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case," and (iii) "the *quality and quantity* of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Id.* at 1323 (citations omitted)(emphasis added).[2]

Further, the complexity of a case does not make summary judgment inappropriate. To the contrary, Rule 56 may prove a particularly appropriate and useful tool for sorting out the "unusual entanglement of legal and factual issues frequently presented in [complex cases such as] antitrust cases ... [and] is favored as a mechanism to secure the just, speedy and inexpensive determination of a case, when its proper use can avoid the cost of trial." *Id.* at 1322 (citations omitted).

The essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991).

## III. Discussion

### A. Defendant's Motion for Summary Judgment

#### 1. Contract Claims (Counts I and III)

Counts I and III allege that Edell and the Angelos firm had a valid and enforceable contract under which the Angelos firm would pay Edell's firm a portion of any recovered contingency fee. Determination of these counts therefore requires the Court's inquiry into whether such a contract existed.

Both parties agree that they entered into an enforceable contract on March 4, 1996. This contract provided that Edell would contribute fifteen hours towards the tobacco litigation each month, in exchange for monthly payments of $10,000, with a guaranteed minimum total payment of $500,000, and payment of all expenses incurred by Edell. (*See* Edell Aff. Ex. F.)

The March 4, 1996 contract was modified by the February 14, 1997 letter from Edell to Smouse. This letter proposed that the Angelos firm compensate Edell at an hourly rate of $325 and Edell's paralegal at an hourly rate of $75 for any time beyond the fifteen hours agreed upon in the original contract. (*See* Edell Aff. Ex. L.) Thereafter, Edell sent monthly billing statements to the Angelos firm reflecting the $325 hourly rate, all of which were paid by the Angelos firm.

By the Angelos's firm's payment of the proposed additional compensation, the Angelos firm consented to the modification of the March 4, 1996 contract as set forth in the February 14, 1997 letter. *See Hackett v. Pension Benefit Guaranty Corp.,* 486 F.Supp. 1357, 1363 (D.Md.1980); *Thomas v. Hudson Motor Co.,* 226 Md. 456, 460, 174 A.2d 181 (1961). Notably, neither the March 4, 1996 contract, nor the February 14, 1997 modification, mentions the sharing of contingency fees.

Edell argues that a contract also existed with Angelos to share any contingency fee

---

**2.** Thus, "if the evidence is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment.... While we have recognized generally that when considering a motion for summary judgment, the district court must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion, we hasten to add that those inferences must, in every case, fall within the range of reasonable probability and *not be so tenuous as to amount to speculation or conjecture." Thompson Everett,* 57 F.3d at 1323 (citations omitted)(emphasis added).

recovered from the tobacco litigation. According to Edell, the parties disagreed only as to the percentage Edell would receive, and not whether Edell was entitled to a share of the fees. Edell contends that the contract to share fees is evidenced by the contract of March 4, 1996, as modified by the letter of February 14, 1997, and by oral statements by Smouse and Angelos implying that the Angelos firm would share any contingency fee.

■ This Court recognized in *Waterfall Farm Systems, Inc. v. Craig*, 914 F.Supp. 1213, 1221 (D.Md.1995), that "[w]hether the parties negotiating a contract intended to be bound by a prior writing or whether they did not intend to bind themselves until a formal agreement was prepared and signed by them must be determined from the facts and circumstances in each particular case." In determining whether the parties intended to be bound, courts examine five factors:

(i) language of the agreement;

(ii) context of the negotiations;

(iii) existence of open terms;

(iv) partial performance; and

(v) custom of such transactions.

*See Phoenix Mutual Life Ins. Co. v. Shady Grove Plaza Ltd. Partnership*, 734 F.Supp. 1181, 1187 (D.Md.1990).

■ Each of the five factors favors the Court's finding that a contract did not exist as to a sharing of the contingency fee. Neither the March 1996 nor the February 1997 agreement mentions Edell's entitlement to any contingency fee. Instead, both agreements provide that Edell would be compensated at an hourly rate, with a guaranteed minimum total compensation.

The context of negotiations further indicates the lack of a meeting of the minds on

the sharing of a contingency fee. In several communications, Edell mentioned that the parties had yet to resolve the issue of contingency fees. (*See* Edell Aff. Ex. P–R, T.) Also, in his response to Edell, Smouse consistently rejected Edell's claim to a contingency fee. (*See* Edell Aff. Ex. U.) Indeed, in one of the last communications, Smouse demanded that Edell retract any claim to a share of the contingency fee, which Edell did. (*See* Edell Aff. Ex. AA, BB.)

With regard to the next three factors, no evidence weighs in favor of the plaintiffs. Edell asserts that he and Angelos/Smouse reached an agreement to share contingency fees. Yet the evidence clearly shows that the parties were still in negotiations, with no firm agreement being reached. As the *Phoenix* court reasoned, "the act of negotiating cannot create the rights and obligations which are the subject of the negotiations. Explicit written evidence of the parties' intentions not to be bound negates the existence of any obligations...." 734 F.Supp. at 1188–89. The sharing the contingency fees was, at best, always left open to further negotiations. Thus, the Angelos firm cannot be bound to share the contingency fee from the Maryland settlement.

### 2. Covenant of Good Faith and Fair Dealing (Count V)

■ Count V alleges that the Angelos firm breached the covenant of good faith and fair dealing in their contract with Edell. In every contract, Maryland recognizes an implied covenant of good faith and fair dealing. It is unclear, however, whether Maryland law recognizes a cause of action for breach of the duty of good faith and fair dealing that is separate from a breach of the underlying contract.[3]

---

**3.** The Maryland Court of Appeals has never explicitly stated that there is no cause of action for breach of the implied covenant of good faith and fair dealing. Nevertheless, recent cases decided by this Court have consistently held that there is not a separate cause of action under Maryland law. *See*

*Baker v. Sun Co.*, 985 F.Supp. 609 (D.Md. 1997) (Young, J.); *Howard Oaks, Inc. v. Maryland Nat'l Bank*, 810 F.Supp. 674 (D.Md. 1993) (Smalkin, J.). Instead, a breach of the covenant is simultaneously a breach of the contract, and can be remedied by a breach of contract suit.

■ Assuming *arguendo* that Maryland does recognize a separate cause of action, the duty of good faith and fair dealing is so narrow that it does not apply here. Explaining the duty in the context of a loan agreement, the Maryland Court of Special Appeals stated that, "the duty of good faith merely obligates a lender to exercise good faith in performing its contractual obligations; it does not obligate a lender to take affirmative actions that the lender is clearly not required to take under its loan documents." *Parker v. Columbia Bank,* 91 Md.App. 346, 366, 604 A.2d 521 (1992).

Thus, the duty does not add obligations to a contract. It might, perhaps, provide a contract remedy when a party affirmatively prevents the other party from performing its obligations and that hindrance alone does not constitute a breach. Such a scenario does not apply to the instant case.

Here, the Angelos firm did not hinder Edell from performing under the contract. Edell performed under the contract by contributing a large amount of time to the tobacco litigation. The Angelos firm performed under the contract by paying Edell the amounts agreed upon in the March 1996 and February 1997 contracts. Because both parties performed their obligations under the contract, there is no breach of the covenant of good faith and fair dealing.

### 3. Fraud Claims

Counts VI and VII allege that the Angelos firm committed intentional misrepresentation and fraud in the inducement by promising Edell a portion of the contingency fee to induce the firm to participate in the Maryland tobacco litigation and the other state class action lawsuits.

■ The elements of fraud in Maryland are:

(i) false representation;

(ii) knowledge that the representation was false, or

reckless indifference for the truth;

(iii) purpose of defrauding the person claiming to be injured;

(iv) justifiable reliance on the representation by the injured person; and

(v) actual damages.

*See Miller v. Fairchild Industries, Inc.,* 97 Md.App. 324, 341–42, 629 A.2d 1293 (1993). Maryland courts have emphasized that fraud exists only when the speaker had (i) intent to defraud, and (ii) knowledge that his statement was false at the time it was made. *See id.* at 343–44, 629 A.2d 1293.

■ The plaintiffs have presented no evidence that the Angelos firm intended to lead Edell's firm to believe that the Angelos firm would remit a portion of the contingency fee to Edell's firm. Indeed, all correspondence from Smouse to Edell rejects the notion that Edell was entitled to a portion of the contingency fee.

The plaintiffs point to Smouse's statement that Angelos would "deal with them fairly" at the end of the litigation as evidence that the Angelos firm promised them a portion of the contingency. The expression "deal fairly" does not refer specifically to payment of the contingency fee. The Angelos firm compensated Edell's firm for Edell's work on the Maryland tobacco litigation, pursuant to the March 1996 and February 1997 contracts, and thus dealt with Edell's firm fairly.[4]

Because the plaintiffs have presented no evidence of intentional misrepresentation or fraud in the inducement, Summary Judgment in favor the defendant is appropriate.

### B. Plaintiffs' Motion to File a Second Amended Complaint

After the defendant filed its Motion for Summary Judgment, the plaintiffs filed a

---

4. The plaintiffs also seem to assert that Angelos's requests for proposals from Edell concerning the sharing of fees were misrepresentations that Angelos would share the fees.

The Court finds that these requests were merely offers to negotiate. As the Court found above, the parties were negotiating, but had not yet agreed, to share fees.

Motion to File a Second Amended Complaint to add a cause of action for negligent misrepresentation in connection with the Maryland tobacco litigation and the other class action lawsuits against the tobacco industry.

■ Federal Rule of Civil Procedure 15(a) permits the Court to grant leave to file a second amended complaint when "justice so requires." Although granting leave is within the discretion of the district court, a court should consider whether the motion has been unduly delayed and whether the amendment will prejudice the opposing party. *See Deasy v. Hill,* 833 F.2d 38 (4th Cir.1987); *United States of America v. Community Home Health of Maryland, Inc.,* 984 F.Supp. 374 (D.Md. 1997).

Here, the plaintiffs did not file the Motion for Leave to File a Second Amended Complaint until after the defendant had already filed its Motion for Summary Judgment. Because the facts alleged in the claim for negligent misrepresentation are the same as the facts alleged for intentional misrepresentation, the Court finds that the amendment would not prejudice the defendant.

■ The Court also finds, however, that the plaintiffs' claim for negligent misrepresentation fails for the same reasons as the plaintiffs' claim for intentional misrepresentation. In Maryland, the elements for negligent misrepresentation are:

(i) the defendant, owing a duty to the plaintiff, negligently asserted a false statement;

(ii) the defendant intended the plaintiff to act upon his statement;

(iii) the defendant had knowledge that the plaintiff would rely on the statement, causing the plaintiff injury;

(iv) the plaintiff justifiably relied on the statement; and

(v) the plaintiff suffered damage proximately caused by the defendant's negligence.

*See Tischler v. Baltimore Bancorp,* 801 F.Supp. 1493 (D.Md.1992); *Village of Cross Keys, Inc. v. United States Gypsum Co.,* 315 Md. 741, 556 A.2d 1126 (Md.1989).

Just as in the Court's finding as to intentional misrepresentation, the Court finds that the Angelos firm did not make any false statements to Edell regarding Edell's entitlement to a share of the fees. Merely stating that Angelos would "deal fairly" with Edell's firm is not an intentional or negligent misrepresentation. The Court will therefore deny the plaintiffs' Motion for Leave to File a Second Amended Complaint, as such as an amendment would be fruitless.

## IV.  Conclusion

For the reasons stated above, the Court will, by separate Order, GRANT Defendant's Motion for Summary Judgment, DENY Plaintiffs' Motion for Leave to File a Second Amended Complaint, and DIRECT the Clerk to CLOSE the CASE.

### ORDER

For the reasons stated in the Court's Memorandum of even date, the Court hereby ORDERS that:

(i) Defendant's Motion for Summary Judgment is GRANTED;

(ii) Plaintiffs' Motion for Leave to File a Second Amended Complaint is DENIED; and

(iii) the Clerk of the Court is DIRECTED to CLOSE the CASE.